IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CSX TRANSPORTATION, INC.,

   Plaintiff,

     v.

GENERAL MILLS, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-201-TWT

**OPINION AND ORDER**

This is a breach of contract action. The Plaintiff CSX Transportation, Inc. is claiming that the Defendant General Mills, Inc. is contractually obligated to indemnify the Plaintiff for a judgment entered against the Plaintiff in a personal injury action. It is before the Court on the Defendant General Mills, Inc.'s Motion to Dismiss [Doc. 23]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 23] is GRANTED.

**I. Background**

This case arises out of a workplace accident in which Douglas Burchfield – a General Mills employee – sustained personal injuries. The relevant facts are as follows. The Plaintiff CSX Transportation, Inc. provides rail transportation services

in multiple areas, including Covington, Georgia.[1] The Plaintiff entered into a contract (the "Agreement") with the Defendant, General Mills, Inc., where the former agreed to construct a private sidetrack – a railroad track connected to a main track – for rail freight traffic to and from the Defendant's Covington, Georgia cereal processing plant.[2]

The Agreement also grants the Defendant the right to conduct "switching" – the process of moving and assembling railcars so that they can be coupled to a locomotive and shipped away – on a portion of the sidetrack.[3] Because the Plaintiff was not conducting all of the switching operations, the parties included a specific liability provision concerning switching ("Section 15"):

> [General Mills] shall have the right to switch with its own trackmobile . . . over [General Mills'] Segment of the Sidetrack. . . . [I]n consideration therefor, [General Mills] assumes all risk of loss, damage, cost, liability, *judgment* and expense (including attorneys' fees) in connection with *any personal injury* to . . . any persons . . . that may be sustained or incurred in connection with, or arising from or growing out of, the operation of [General Mills'] trackmobile . . . upon said Sidetrack.[4]

---

[1] Compl. ¶ 5.

[2] Compl. ¶¶ 7-8.

[3] Compl. ¶ 10.

[4] Compl., Ex. A.

This case concerns a switching operation performed on an AEX 7136 railcar. The Star of the West Milling ("Star") Co. – an agricultural company based in Frankenmuth, Michigan – shipped grain to the Defendant's Covington facility using an AEX 7136 railcar, which it leased from The Andersons, Inc.[5] On the day of the incident, Burchfield and a fellow employee, Rodney Turk, were using a trackmobile – a railcar mover – to "switch" certain railcars, including Star's AEX 7136.[6] Turk, in particular, was operating the trackmobile.[7] After Turk and Burchfield moved the AEX 7136 onto a holding track, they uncoupled it from the trackmobile and then proceeded to move another railcar located on a part of the sidetrack farther downhill.[8] Then, after Burchfield had exited the trackmobile, the AEX 7136 rolled down the track and collided with the trackmobile.[9] As a result, both railcars and the trackmobile struck Burchfield, causing significant personal injuries.[10]

---

[5]Compl. ¶ 24.

[6]Compl. ¶ 26.

[7]Compl. ¶ 26.

[8]Compl. ¶¶ 27, 29.

[9]Compl. ¶ 29.

[10]Compl. ¶ 30.

On June 1, 2007, Burchfield brought suit against the Plaintiff, asserting a negligence claim.[11] Ultimately, Burchfield secured a jury verdict in his favor for $20,559,004.[12] The jury found that Burchfield was "0% negligent as compared to the 100% negligence of [CSX]."[13] Both parties appealed the final judgment entered pursuant to the jury award,[14] and then participated in court-mandated mediation where they finally agreed to a settlement amount of $16,000,000.[15] The Plaintiff paid this amount in full.[16] The Plaintiff then demanded indemnification from the Defendant under the Agreement, and the latter refused.[17] Consequently, the Plaintiff filed suit against the Defendant, asserting a claim for breach of contract. The Defendant now moves to dismiss.

---

[11] Compl. ¶ 38.

[12] Compl. ¶ 45.

[13] Jury Verdict at 1, Burchfield v. CSX Transportation, Inc. et al., No. 1:07-cv-1263-TWT (N.D. Ga. Apr. 19, 2012), ECF No. 710.

[14] Compl. ¶ 47.

[15] Compl. ¶ 50.

[16] Compl. ¶ 50.

[17] Compl. ¶ 52.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[18] For a claim to be plausible, the supporting factual matter must establish more than a mere possibility that the plaintiff is entitled to relief.[19] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[20]

## III. Discussion

In moving to dismiss, the Defendant makes two arguments: (1) the Agreement does not require the Defendant to indemnify the Plaintiff for the damages the latter paid to Burchfield, and (2) if the Agreement does require such indemnity, it is

---

[18] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

[19] See Iqbal, 556 U.S. at 678.

[20] See id.; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

inconsistent with Georgia public policy, and thus void. The Court's analysis begins – and ends – with the first argument.

Under Georgia law, when interpreting a contract the Court must first "decide whether the language is clear and unambiguous."[21] If it is, then that concludes the matter.[22] However, "if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity."[23] If "the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."[24] The "construction of a contract is a question of law for the courts . . . as is the existence or nonexistence of an ambiguity in a contract."[25] Additionally, in the context of an indemnity contract, the Court must construe "the words . . . strictly against the indemnitee."[26]

---

[21] CareAmercia, Inc. v. Southern Care Corp., 229 Ga. App. 878, 880 (1997).

[22] See id. ("If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning.").

[23] Id.

[24] Id.

[25] Avion Systems, Inc. v. Thompson, 293 Ga. App. 60, 62-63 (2008).

[26] Service Merchandise Co. v. Hunter Fan Co., 274 Ga. App. 290, 292 (2005).

Here, two provisions of the Agreement are relevant to the Court's analysis.

Section 11 – the Agreement's general indemnity provision – states:

> *Except as otherwise provided herein*, any and all damages, claims . . . causes of action suits . . . *judgments* and interest whatsoever . . . in connection with injury to . . . any person . . . including employees . . . of the parties . . . arising out of or resulting directly or indirectly from the . . . use . . . of the Sidetrack shall be divided between the parties as follows:
>
> (A) Each party shall indemnify and hold the other party harmless from all losses arising from the indemnifying party's willful or gross negligence, its sole negligence and/or its joint or concurring negligence with a third party.
>
> (B) The parties agree to jointly defend and bear equally between them all losses arising from their joint or concurring negligence.[27]

Thus, Section 11 generally defines each party's liability, but clarifies that other provisions in the Agreement may provide for different obligations in different circumstances. As noted above, Section 15 – which addresses "switching" – includes a separate, independent liability provision:

> [General Mills] shall have the right to switch with its own trackmobile . . . over [General Mills'] Segment of the Sidetrack. . . . [I]n consideration therefor, [General Mills] assumes *all risk* of loss, damage, cost, liability, judgment and expense . . . in connection with any personal injury . . . that may be sustained or incurred in connection with, or

---

[27]Compl., Ex. A (emphasis added).

arising from or growing out of, the operation of [General Mills'] trackmobile . . . upon said Sidetrack.[28]

The Plaintiff argues that, under Section 15, the Defendant must indemnify the Plaintiff for *any* judgment entered against the Plaintiff based on an injury arising out of the Defendant's switching operations – even if the Plaintiff's negligence caused the injury. In response, the Defendant points out that – under Georgia law – for a contract to provide for indemnification for losses stemming from the indemnitee's negligence, the contract must meet a heightened specificity requirement. The Defendant argues that, despite its broad terms, Section 15 does not meet this requirement. The Court agrees with the Defendant, and concludes that Section 15 of the Agreement does not require the Defendant to indemnify the Plaintiff for a judgment where the latter, but not the former, was found negligent.

Georgia courts have made clear that "[u]nless a contract for indemnification *explicitly* and *expressly* states that the negligence of the indemnitee is covered, courts [may] not interpret such an agreement as a promise to save the indemnitee from his own negligence."[29] Thus, the Plaintiff's reading is correct only if the Agreement "*expressly, plainly, clearly, and unequivocally* state[s] that [the Defendant must]

---

[28] Compl., Ex. A (emphasis added).

[29] Park Pride Atlanta, Inc. v. City of Atlanta, 246 Ga. App. 689, 690 (2000) (emphasis added).

indemnify the [Plaintiff] from the [Plaintiff's] own negligence."[30] Thus, generally, "where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts."[31] According to Georgia courts, the policy behind this interpretive rule "is to assure that people exercise due care in their activities for fear of liability, rather than act carelessly in the knowledge that indemnity insurance will relieve them."[32] In addition, "[p]ublic policy is reluctant to cast the burden of negligent actions upon those who are not actually at fault."[33]

Here, Section 15 does not "expressly, plainly, clearly, and unequivocally" state that the Defendant must indemnify the Plaintiff for a judgment stemming from the latter's negligence. Although Section 15 uses broad terms to describe the risk assumed

---

[30] Id. at 691 (emphasis added); see also McMichael v. Robinson, 162 Ga. App. 67, 69 (1982) ("The general rule in this state is that express indemnity contracts are to be strictly construed and that an understanding purporting to indemnify or hold harmless the indemnitees' sole acts of negligence are void as being against public policy in the absence of *plain*, *clear* and *unequivocal* language by the indemnitor accepting the indemnitees' negligence as its own.") (emphasis added).

[31] Batson-Cook Co. v. Georgia Marble Setting Co., 112 Ga. App. 226, 230 (1965) (internal quotation marks omitted).

[32] Allstate Ins. Co. v. City of Atlanta, 202 Ga. App. 692, 693 (1992).

[33] Ryder Integrated Logistics Inc. v. BellSouth Telecommunications, Inc., 281 Ga. 736, 737 (2007).

by the Defendant[34] – e.g., "[General Mills] assumes *all* risk of loss . . . in connection with *any* personal injury"[35] – Georgia courts have routinely found that such broad terms are not, in themselves, sufficient. For example, in <u>Southern Railway Company v. Union Camp Corporation</u>,[36] an employee of Southern was injured while placing a cart onto railroad tracks located on Southern's property. The cart was supposed to be sent to Union's property for use in performing maintenance on Union's tracks. An agreement between Southern and Union stated: "[Union] . . . agrees to indemnify [Southern] against *all* loss, damage, liability or expense which it may incur or for which it may become liable because of . . . any injury to . . . any person . . . which occurs during or as a result of the maintenance of said tracks by [Southern]."[37] The employee sued Southern, and Southern filed a third-party complaint against Union claiming that, under their agreement, Union "is contractually obligated to indemnify [Southern] in the event that it is found liable to [the employee]."[38] Despite the broad terms of the indemnity clause, the court nonetheless found that it did not "*expressly*

---

[34]Pl.'s Resp. Br., at 9 ("Section 15.1 requires no finding of fault to allocate responsibility; it imposes absolute liability on GM for <u>all</u> risk of loss incurred in connection with or arising out of one specific activity: industry switching by GM on the GM portion of the sidetrack.").

[35]Compl., Ex. A (emphasis added).

[36]181 Ga. App. 691 (1987).

[37]<u>Id.</u> at 692 (emphasis added).

[38]<u>Id.</u> at 691.

state[] that the negligence of the indemnitee is covered."[39] Likewise, in Park Pride Atlanta, Inc. v. City of Atlanta,[40] a volunteer participating in a "park beautification project" was killed after a parked truck rolled backwards and struck her. The truck belonged to the City of Atlanta and was being operated by a City employee (the "driver") who forgot to set the brakes.[41] The victim's executor brought suit against several parties, including the City and the driver.[42] The City and the driver settled the case with the victim's executor, and then brought suit against Park Pride Atlanta – "a nonprofit organization that coordinated volunteers to beautify City parks"[43] – seeking indemnification.[44] The indemnification claim was based on a contract provision which stated: "Park Pride agrees to . . . hold harmless the City, its officers, agents and employees, from *any* and *all* claims, . . . actions, . . . suits, damages, loss and expense of any kind . . . to any person . . . for any activity sponsored by or coordinated by Park Pride."[45] In rejecting the indemnification claim, the court reasoned: "[a]lthough the

---

[39]Id. at 692 (emphasis added).

[40]246 Ga. App. 689 (2000).

[41]See id.

[42]See id.

[43]Id. at 689 n.2.

[44]See id. at 691.

[45]Id.

sweep of this indemnification wording may initially appear to indemnify the City 'against any and all claims,' this language is bereft of any express or explicit statement about coverage for the City's own negligent acts or omissions done by the City's own employees."[46] Similarly, here, although Section 15 uses broad terms, it does not expressly speak to the issue of indemnification and losses arising from the Plaintiff's negligence.

In response, the Plaintiff first argues that the Defendant's reading of Section 15 would render it meaningless.[47] According to the Plaintiff, if Section 15 does not provide for indemnification for judgments stemming from the Plaintiff's negligence, then it provides no greater protection than that provided by Section 11.1(B), which states: "[t]he parties agree to jointly defend and bear equally between them all losses arising from their *joint* or *concurring* negligence."[48] This is incorrect. Even under the Defendant's reading, Section 15 would still have an effect independent of Section 11.1(B). For example, if *both* the Plaintiff and the Defendant had been found negligent, Section 15 would have allowed the Plaintiff to seek *full* indemnification.

---

[46]Id.

[47]Pl.'s Resp. Br., at 10 ("To read Section 15 to limit GM's liability for losses arising from the operation of the trackmobile to only those where GM is at least partially negligent would render Section 15 meaningless.").

[48]Compl., Ex. A.

To be sure, the Georgia Court of Appeals has stated that a contract need not satisfy the heightened specification requirement in order to provide full indemnification when the indemnitor is also at fault:

> [A]lthough language in an agreement may not be sufficiently explicit to indemnify the indemnitee against liability resulting strictly from its own negligence alone, such less than explicit language may be sufficient to require indemnification for damages *resulting from the combination of the indemnitee's negligence and the indemnitor's negligence.* . . . Applying this principle, . . . where . . . an indemnification clause requires indemnification of losses that 'arise out of' certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have *partially* caused the loss.[49]

Thus, Section 15 carves out an exception to Section 11.1(B) because the latter generally requires the parties to *share* the liability when they are both found negligent. Additionally, Section 15 has another effect: it serves as a liability waiver by the Defendant. Under Section 15, the Defendant is not allowed to seek damages from the Plaintiff – even if the Plaintiff was solely negligent – for any injury arising out of the Plaintiff's switching operations. Thus, contrary to the Plaintiff's assertion, the Defendant's interpretation of Section 15 does not render it meaningless.

---

[49] Lawyers Title Ins. Corp. v. New Freedom Mortgage Corp., 288 Ga. App. 642, 647-48 (2007) (emphasis added); see also George R. Hall, Inc. v. Superior Trucking Co., 532 F. Supp. 985, 993 (N.D. Ga. 1982) ("[C]ourts will be more willing to find indemnity in favor of a negligent indemnitee when the indemnitor is also negligent.").

The Plaintiff then argues that the negligence of a third party – e.g., The Andersons – may have contributed to the accident.[50] But the Plaintiff fails to explain why this is relevant. To the extent that the Plaintiff is arguing that a contract need not satisfy the heightened specificity requirement in order to provide for indemnification when the indemnitee is found jointly negligent with a third party, the Plaintiff cites to no case in support.[51] In fact, Georgia courts have consistently stated – in general terms – that the requirement applies any time a party is seeking indemnification for losses arising out of its own negligence.[52] Thus, even assuming that a third party's negligence contributed to the accident, the Plaintiff would not be entitled to indemnification unless the Agreement *expressly* and *unequivocally* provided for it. As already explained, it does not.

---

[50] Pl.'s Resp. Br., at 22-23.

[51] However, as noted earlier, Georgia courts have carved out an exception for when the *indemnitor* – rather than a third party – is at least partially at fault. See Lawyers Title, 288 Ga. App. at 647-48; George R. Hall, Inc., 532 F. Supp. at 993.

[52] See, e.g., BBL-McCarthy, LLC v. Baldwin Paving Co., 285 Ga. App. 494, 500 (2007) ("[I]t is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's *own* negligence unless the contract expressly states that the negligence of the indemnitee is covered.") (internal quotation marks omitted) (emphasis added); Gough v. Lessley, 119 Ga. App. 275, 277 (1969) ("[P]arties may validly provide for indemnity of the indemnitee for the latter's *own* future acts of negligence, provided the intention to indemnify the indemnitee for its own negligence be expressed plainly, clearly and unequivocally in sufficiently specific words.") (emphasis added).

In a final effort, the Plaintiff briefly argues that it may still be entitled to indemnification because the Burchfield judgment did not necessarily stem from the Plaintiff's negligence.[53] In particular, the Plaintiff asserts that the claim in Burchfield was based on a violation of the Federal Safety Appliance Act ("FSAA"), which is a strict liability offense.[54] Thus, according to the Plaintiff, the jury's award was not based on a finding that the Plaintiff was negligent. This is incorrect. To be clear, the FSAA does not create a private right of action.[55] Thus, Burchfield asserted a standard state-law negligence claim, and he simply argued that showing an FSAA violation would conclusively establish the Plaintiff's negligence.[56] In returning a verdict for Burchfield, the jury expressly found that the Plaintiff was negligent, and that

---

[53]Pl.'s Resp. Br., at 23.

[54]Pl.'s Resp. Br., at 23-25.

[55]See Crane v. Cedar Rapids & I. C. Ry. Co., 395 U.S. 164, 166 (1969) ("The Safety Appliance Act did not create a federal cause of action for . . . nonemployees seeking damages for injuries resulting from a railroad's violation of the Act . . . [and so] the nonemployee must look for his remedy to a commonlaw action in tort . . . [and] implement a state cause of action.").

[56]See Burchfield v. CSX Transp., Inc., No. CIVA.107-CV-1263-TWT, 2009 WL 1405144, at *6 (N.D. Ga. May 15, 2009) ("[T]he Plaintiff's case must be brought as a state common law claim . . . [and] [i]n Georgia, a personal injury resulting from a violation of the Safety Appliance Act constitutes negligence *per se*.").

Burchfield was not.[57] It is immaterial that the jury may have reached this conclusion after finding an FSAA violation. Thus, the judgment against the Plaintiff was based on its negligence, and so the Plaintiff may not seek indemnification for that judgment under the Agreement.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant General Mills, Inc.'s Motion to Dismiss [Doc. 23].

SO ORDERED, this 3 day of February, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[57] See Jury Verdict at 1, Burchfield v. CSX Transportation, Inc. et al., No. 1:07-cv-1263-TWT (N.D. Ga. Apr. 19, 2012), ECF No. 710.