IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CSX TRANSPORTATION, INC.,

    Plaintiff,

       v.

GENERAL MILLS, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-201-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Plaintiff's

Motion for Partial Summary Judgment [Doc. 102]. For the reasons set forth

below, the Plaintiff's Motion for Partial Summary Judgment [Doc. 102] is

GRANTED in part and DENIED in part.

## I. Background

This case arises out of a workplace accident in which Douglas

Burchfield, a General Mills employee, sustained personal injuries. The facts

are set out in greater detail in this Court's numerous previous Orders. On

February 3, 2015, this Court granted the Defendant's initial Motion to

Dismiss.[1] The Court, applying federal collateral estoppel law, concluded that

---

[1] *See CSX Transp., Inc. v. General Mills, Inc.*, No.
1:14-CV-201-TWT, 2015 WL 468682 (N.D. Ga. Feb. 3, 2015).

the Plaintiff was barred from relitigating its negligence due to the factual findings that were made in the underlying *Burchfield* litigation. The Court also concluded that the Sidetrack Agreement does not provide a right of indemnity when the Plaintiff's sole negligence causes an accident.[2] The Plaintiff then appealed, arguing that: (1) this Court incorrectly applied federal collateral estoppel law in concluding that the issue of fault could not be relitigated; and (2) the Sidetrack Agreement entitles the Plaintiff to indemnification regardless of who is at fault. The Eleventh Circuit reversed, holding that state collateral estoppel law, and not federal law, should determine the preclusive effect of a federal judgment where the district court exercised diversity jurisdiction.[3] It declined to decide the Plaintiff's second argument on appeal because this Court "should have the first opportunity to decide the predicate question of privity."[4] It then remanded to this Court to determine whether the parties were in privity under Georgia law, and thus, whether collateral estoppel precludes the Plaintiff's claim for indemnification.

On October 6, 2017, the Court granted in part and denied in part the Defendant's second Motion to Dismiss. Relevant to this Motion, the Court

---

[2] *Id.*

[3] *CSX Transp., Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017).

[4] *Id.*

T:\ORDERS\14\CSX Transportation\mpsjtwt.docx

declined to dismiss Counts II and III of the Amended Complaint, concluding that collateral estoppel did not bar relitigation of fault in the underlying accident since the Defendant and Mr. Burchfield were not in privity under Georgia law. The Court dismissed Count I for the same reasons that it previously dismissed that claim in its Order from February 3, 2015.

The Plaintiff now moves for partial summary judgment. The discovery period in this case has not concluded, and when the Plaintiff filed this Motion, discovery had only been underway for a few weeks.[5] The Plaintiff bases its Motion for Partial Summary Judgment on facts admitted in the Defendant's Amended Answer. The Plaintiff argues that it seeks to "narrow" the issues to be litigated in this case based upon these factual admissions made by the Defendant. Specifically, the Plaintiff argues that, based upon these admissions, there is no dispute that: (1) Mr. Burchfield's accident arose out of the operation of the trackmobile within the meaning of Section 15.1 of the Sidetrack Agreement; (2) if the jury concludes that the Defendant's negligence contributed in part to Mr. Burchfield's injuries, then the Defendant must indemnify the Plaintiff for the entire loss incurred under the terms of the Sidetrack Agreement; and (3) the Plaintiff's claim for prejudgment interest is not premature for review. Most of these arguments relate to "affirmative

---

[5] *See* Scheduling Order [Doc. 101].

defenses" raised in the Defendant's Amended Answer. The Defendant argues in response that adjudication of these issues at this point would be premature because disputes of material fact exist as to each issue.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[6] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[7] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[8] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[9] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[10]

---

[6] FED. R. CIV. P. 56(a).

[7] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[10] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

# III. Discussion

## A. The Defendant's Procedural Objections

The Defendant first argues that the Plaintiff's Motion should be outright denied due to two "threshold" procedural deficiencies.[11] First, it contends that the Plaintiff's Motion fails to comply with the Local Rules because it relies exclusively on the Amended Complaint and the Amended Answer. In support of this argument, the Defendant cites Local Rule 56.1(B)(1). This Local Rule provides that each material fact in a movant's statement of material facts must be "supported by a citation to evidence proving such fact."[12] It further provides that the Court will not consider any fact "supported by a citation to a pleading rather than to evidence."[13] Ordinarily, it is true that citations to a pleading cannot support a material fact at this stage. However, a party is bound by the admissions in its pleadings.[14] "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."[15] Thus, despite Local Rule 56.1(B)(1), the Court

---

[11] Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 9-10.

[12] N.D. Ga. Local R. 56.1(B)(1).

[13] *Id.*

[14] *See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

[15] *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir.

can consider facts admitted by the Defendant in its Amended Answer at the summary judgment stage since they have been conclusively established.[16]

The Defendant then argues that the Plaintiff's Motion for Partial Summary Judgment, which was filed before discovery began, is premature at this point in the litigation.[17] However, the Defendant seems to misconstrue the purpose of the Plaintiff's Motion. The Plaintiff's Motion focuses on a few narrow issues. It argues that, based upon admissions made by the Defendant in its Amended Answer, no question of fact exists as to: whether this dispute arose out of the use of the Defendant's trackmobile; whether Section 15.1's indemnification applies to these facts; whether public policy prohibits indemnification of the Plaintiff under these circumstances; and whether the Plaintiff's claim for prejudgment interest was premature. The Plaintiff does not argue that summary judgment is warranted as to the negligence of each of the parties. Rather, it seeks a ruling that there is no genuine dispute of fact as to the specific issues mentioned above. The Plaintiff argues that the facts

---

2009) (internal quotations omitted).

[16]     *See, e.g.*, *Praetorian Ins. Co. v. APD Sols., LLC*, 259 F. Supp. 3d 1376, 1377 n.1 (N.D. Ga. 2016) ("In its Response to Praetorian's Statement of Undisputed Material Facts, APD repeatedly asks the Court to not consider facts which are 'supported by a citation to a pleading rather than to evidence.' LR 56.1(B)(1), NDGa. However, '[t]he general rule is that a party is bound by the admissions in [its] pleadings.'").

[17]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 10-11.

admitted in the Defendant's Amended Answer show that there is no genuine dispute of material fact as to these issues, and that it is entitled to judgment as a matter of law as to this issue.[18]

As noted above, the general rule is that a party is bound by the admissions in its pleadings.[19] Facts admitted in the pleadings are conclusively established and cannot be controverted by evidence.[20] Furthermore, the Eleventh Circuit has approved of the grant of summary judgment based upon a party's admission of allegations in pleadings.[21] Thus, the facts admitted by the Defendant in the Amended Answer are conclusively established and cannot be controverted by evidence offered by the Defendant. The question now is whether these admitted facts establish that the Plaintiff is entitled to judgment as a matter of law as to the issues raised in its Motion for Partial Summary Judgment.

The Court will not deny the Plaintiff's Motion for Partial Summary Judgment, or delay ruling on it, merely because of general concerns as to

---

[18]    Pl.'s Reply Br., at 2.

[19]    *See Best Canvas Prods. & Supplies*, 713 F.2d at 621.

[20]    *Cooper*, 575 F.3d at 1178.

[21]    *Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 804 (11th Cir. 2011) (concluding that a district court properly granted summary judgment based upon admissions made in the defendant's answer).

whether this is the best time for it to have been filed. The Plaintiff essentially argues that, given certain admissions in the Amended Answer, the issues needed to be litigated in this case have been narrowed. To the extent that the Plaintiff is correct about this, there is no reason to delay ruling on its Motion and narrowing the issues to be decided. To the extent that the Plaintiff is incorrect as to whether these admissions resolve some of the issues in this case, then the Court will deny its Motion. This requires an analysis of the specific allegations admitted, and cannot be decided simply because the grant of summary judgment at this stage would seem to be premature.

## B. The Applicability of Section 15.1

The Plaintiff first moves for summary judgment as to the applicability of Section 15.1 of the Sidetrack Agreement. The Plaintiff seeks a ruling that: (1) Section 15.1 applies to incidents arising out of the operation of a trackmobile on the sidetrack; and (2) the accident involving Mr. Burchfield arose out of the operation of a trackmobile on the Defendant's sidetrack. Essentially, the Plaintiff asks the Court to rule, based upon the admissions made by the Defendant in its Amended Answer, that there is no dispute that Mr. Burchfield's accident arose out of the use of a trackmobile, and consequently that Section 15.1 applies as a matter of law to this question of indemnification. The Defendant argues that a factual dispute exists as to this question.

The Sidetrack Agreement contains two indemnity provisions that are relevant to the Court's analysis. Section 11, the Sidetrack Agreement's general indemnity provision, states that:

> Except as otherwise provided herein, any and all damages, claims . . . causes of action suits . . . judgments and interest whatsoever . . . in connection with injury to . . . any person . . . including employees . . . of the parties . . . arising out of or resulting directly or indirectly from the . . . use . . . of the Sidetrack shall be divided between the parties as follows:
>
> (A) Each party shall indemnify and hold the other party harmless from all losses arising from the indemnifying party's willful or gross negligence, its sole negligence and/or its joint or concurring negligence with a third party.
>
> (B) The parties agree to jointly defend and bear equally between them all losses arising from their joint or concurring negligence.[22]

As this Court previously noted, "Section 11 generally defines each party's liability, but clarifies that other provisions in the Agreement may provide for different obligations in different circumstances."[23]

In contrast, Section 15, which addresses "switching," includes a "separate, independent liability provision."[24] Section 15.1 provides that:

> [General Mills] shall have the right to switch with its own trackmobile . . . over [General Mills'] Segment of the Sidetrack. . . . [I]n consideration therefor, [General Mills] assumes all risk of loss, damage, cost, liability, judgment and expense . . . in

---

[22] Compl., Ex. A.

[23] *See* Opinion and Order [Doc. 36], at 7.

[24] *Id.*

connection with any personal injury . . . that may be sustained or incurred in connection with, or arising from or growing out of, the operation of [General Mills'] trackmobile . . . upon said Sidetrack.[25]

In its previous Opinion and Order, the Court concluded that under this provision, "if *both* the Plaintiff and the Defendant had been found negligent, Section 15 would have allowed the Plaintiff to seek *full* indemnification."[26] Thus, Section 15.1, which applies to losses, liabilities, and judgments arising out of the operation of the Defendant's trackmobile on the sidetrack, allows the Plaintiff to seek full indemnification from the Defendant if both of them are found to have been negligent in the incident. The Court also concluded that Section 15.1 does not require the Defendant to indemnify the Plaintiff for a judgment in which the Plaintiff was found to be solely negligent.[27]

The Plaintiff's Motion for Partial Summary Judgment does not seek a ruling as to whether both the Plaintiff and the Defendant were negligent in the underlying accident. Instead, the Plaintiff seeks a ruling that there is no dispute of fact that the Burchfield incident arose out of the operation of the Defendant's trackmobile on the sidetrack, and that Section 15.1's specific indemnity provision, as opposed to the general indemnity provision in Section

---

[25]    *See* Compl., Ex. A.

[26]    *See* Opinion and Order [Doc. 36], at 12.

[27]    *See id.* at 8.

11, applies here. However, the Court concludes that a genuine issue of fact exists that precludes granting summary judgment as to this question. In its Amended Answer, the Defendant admits that: Mr. Burchfield sustained significant personal injuries on June 5, 2005;[28] that Mr. Burchfield and another employee were moving railcars, including the railcar AEX 7136, a 286,000 pound loaded railcar;[29] that the AEX 7136 rolled down the track and crashed;[30] that Mr. Turk was using the trackmobile on the sidetrack that day;[31] that Mr. Turk used the trackmobile to move the AEX 7136 on the date of this incident;[32] and that the AEX 7136 and the Defendant's trackmobile ran over Mr. Burchfield.[33] The Defendant denies that Mr. Burchfield's injuries occurred while in the course of using its trackmobile,[34] denies that Mr. Burchfield and Mr. Turk allowed the AEX 7136 to roll by failing to engage the manual derail device on the trackmobile,[35] and denies that the incident arose

---

[28]     Am. Answer ¶ 22.

[29]     *Id.* ¶ 23.

[30]     *Id.* ¶ 28.

[31]     *Id.* ¶ 25.

[32]     *Id.*

[33]     *Id.* ¶ 29.

[34]     *Id.* ¶ 22.

[35]     *Id.* ¶ 27.

out of the operation of General Mills' trackmobile.[36] The Defendant argues that, because of these denials, a genuine dispute of fact could exist as to whether Mr. Burchfield's injuries arose out of the operation of the trackmobile.[37] The Defendant argues that the evidence at trial could establish that the accident occurred "solely because CSXT delivered a railcar with a faulty handbrake, and the operation of the trackmobile . . . had nothing to do with it."[38]

The Plaintiff bears the burden of proof on this issue. Therefore, it must show that, given these conclusively-established facts, a reasonable factfinder *must* conclude that Mr. Burchfield's injuries arose out of the use of the trackmobile. The Court finds that the admitted facts fail to satisfy this high standard. "Under Georgia law pertaining to indemnity provisions, 'arising out of' means 'had its origins in,' 'grew out of,' or 'flowed from.'"[39] The term "arising out of" does not equate to proximate cause in the "strict legal sense," and it does not "require a finding that the injury was directly and proximately caused

---

[36] *Id.* ¶ 28.

[37] Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 11-12.

[38] *Id.* at 12.

[39] *JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.*, 311 Ga. App. 269, 270 (2011) (internal alterations and quotations omitted).

T:\ORDERS\14\CSX Transportation\mpsjtwt.docx

by the insured's actions."[40] "Arising from" does not have the same meaning as "proximately caused by."[41] Instead, almost any causal connection or relationship will suffice.[42] Thus, any claim or liability that the Plaintiff incurred "does not have to be the direct proximate result" of the operation of the trackmobile on the sidetrack to arise from it within the meaning of the indemnity provision in Section 15.1.[43] The Plaintiff only must show that Mr. Burchfield's injuries "arose out of or were connected in some way" to the operation of the trackmobile for Section 15.1 to govern.

The parties dispute what standard to apply to determine whether Mr. Burchfield's injuries "arose from" the operation of the trackmobile. The Plaintiff argues that Mr. Burchfield's injuries arose from the operation of the trackmobile if they "grew out of," "flowed from," or had almost any causal connection to these operations.[44] The Defendant, in contrast, argues that a stricter standard should apply.[45] According to the Defendant, Section 15.1 is

---

[40] *Id.* (internal quotations omitted).

[41] *See Interface Grp.‑Nev., Inc. v. Freeman Decorating Co.*, 222 Ga. App. 44, 45 (1996) (citing *Abercrombie v. Ga. Farm Bureau*, 216 Ga. App. 602, 604 (1995)).

[42] *JNJ Found. Specialists*, 311 Ga. App. at 270.

[43] *Interface Grp.‑Nev*, 222 Ga. App. at 45.

[44] Pl.'s Mot. for Partial Summ. J., at 9‑10.

[45] Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 12‑15.

ambiguous, and consequently, it should be construed against the Plaintiff as the drafting party.[46] Thus, the "more applicable case law" would be cases construing the phrase "arising from" in the context of insurance *exclusions*, as opposed to insurance inclusions.[47] The Defendant argues that this interpretation of "arising from" requires the trackmobile operations to be the but-for cause of Mr. Burchfield's injuries.[48]

First, it is unclear whether there is any meaningful difference between the parties' interpretation of "arising from." Whether Mr. Burchfield's injuries "flowed from," "grew out of," or had a causal connection to the trackmobile operations seems to still ask whether these operations were a but-for cause of this accident. However, even when applying the Plaintiff's more lenient standard, the Plaintiff has failed to show that no dispute of fact exists as to whether Mr. Burchfield's accident arose from the operation of the trackmobile. In its Amended Answer, the Defendant admitted that Mr. Burchfield and another employee were moving railcars, that AEX 7136 rolled down the tracks and crashed, and that both AEX 7136 and the Defendant's trackmobile ran over Mr. Burchfield. However, the Defendant denies the Plaintiff's allegation

---

[46]     *Id.* at 13-14.

[47]     *Id.* at 14.

[48]     *Id.*

that these events occurred during the operation of the trackmobile. They only admit that, at some point that day, Mr. Turk and Mr. Burchfield had used the trackmobile on the sidetrack. These admissions do not conclusively establish a causal connection between the operation of the trackmobile and Mr. Burchfield's injuries. A reasonable jury could still conclude, despite these admissions, that this accident was not causally connected to the use of the trackmobile. Thus, since a genuine dispute of fact still exists as to whether these injuries "arose out of" the operation of the Defendant's trackmobile, the Court cannot conclude, as a matter of law, that Section 15.1 must govern the question of indemnity.

The Plaintiff argues that "the record established by General Mills' answer is dispositive and clear: Mr. Burchfield's injuries could not have occurred except for the fact that Messrs. Burchfield and Turk were operating the trackmobile and conducting switching operations on the date of the accident."[49] It further contends that "[h]ad the trackmobile not been used and switching operations not occurred, AEX 7136 would not have been moved and placed on an incline, and neither AEX 7136 nor the trackmobile would have rolled down the incline and caused Mr. Burchfield's injuries – irrespective of

---

[49]    Pl.'s Reply Br., at 6.

whether AEX 7136 had a faulty handbrake."[50]  However, the Defendant did not admit all of these factual assertions in the Amended Answer. Instead, the Defendant merely admitted that Mr. Burchfield was moving railcars before the accident, that the AEX 7136 began to roll down the incline, and that the AEX 7136 and the trackmobile ran over Mr. Burchfield. They do not admit that Mr. Burchfield was operating the trackmobile at this time, or that the trackmobile was involved in moving and placing the AEX 7136 on an incline. Without such admissions, the Plaintiff has not established the causal connection between the operation of the trackmobile and Mr. Burchfield's injuries. Thus, the record is not "dispositive and clear."

## C. The Scope and Enforceability of Section 15.1

Next, the Plaintiff moves for summary judgment as to both the scope and the enforceability of the indemnification provision of Section 15.1. First, the Plaintiff seeks a ruling from the Court that, if the negligence of both parties is found to have contributed to the accident, then Section 15.1 provides that the Defendant should fully indemnify the Plaintiff. Second, the Plaintiff seeks a ruling that, as a matter of law, such indemnification would not violate Georgia public policy. The Court addresses each of these in turn.

---

[50]    *Id.*

## 1. Indemnification Under Section 15.1

First, the Plaintiff moves for summary judgment as to whether it is entitled to indemnification under Section 15.1 if the Defendant is also found negligent by a jury.[51] The Plaintiff argues that, under the terms of Section 15.1, it is entitled to indemnification under that provision, as a matter of law, if the Defendant is also found to have been negligent.[52] The Plaintiff argues that this is true given this Court's previous ruling construing Section 15.1.[53] In its previous Opinion and Order, the Court denied the Defendant's Motion to Dismiss, concluding that Section 15.1 allows the Plaintiff to seek full indemnification from the Defendant if both the Plaintiff and the Defendant have been found negligent.[54] In contrast, Section 11.1(B) of the Sidetrack Agreement provides that the parties agree to jointly defend and equally bear all losses arising from their joint or concurring negligence.[55]

The Court agrees with the Plaintiff based upon this holding in its previous Opinion and Order. "Initially, the construction of the contract is a

---

[51]    Pl.'s Mot. for Partial Summ. J., at 13.

[52]    *Id.*

[53]    *Id.* at 13-14.

[54]    *See* Opinion and Order [Doc. 36], at 12 ("For example, if *both* the Plaintiff and the Defendant had been found negligent, Section 15 would have allowed the Plaintiff to seek *full* indemnification.").

[55]    *Id.*

T:\ORDERS\14\CSX Transportation\mpsjtwt.docx

question of law for the court."[56] In its previous Opinion and Order, the Court reviewed both the language of the Sidetrack Agreement and Georgia case law construing indemnification agreements. The Court concluded, based upon this case law, that Section 15.1 provides for indemnification in the context of switching operations when both the Plaintiff and the Defendant have been found negligent. However, it concluded that Georgia law precluded indemnification for the Plaintiff's sole negligence absent clear language in the contract providing for such indemnification. Based upon this ruling, the Court now holds that, if a jury finds that this incident arose from the operation of the Defendant's trackmobile, and if a jury finds both the Plaintiff and the Defendant to have been negligent, then, as a matter of law, Section 15.1 provides that the Defendant must fully indemnify the Plaintiff.

### 2. Public Policy

Next, the Plaintiff moves for summary judgment as to whether public policy bars it from seeking indemnification for its own negligence.[57] In its Eleventh Affirmative Defense in its Amended Answer, the Defendant contends that "[t]o the extent the Plaintiff seeks indemnity for its own negligence

---

[56] *S. Point Retail Partners, LLC v. N. Am. Props. Atlanta, Ltd.*, 304 Ga. App. 419, 421 (2010) (internal quotations omitted).

[57] Pl.'s Mot. for Partial Summ. J., at 17.

Plaintiff's claims are barred as contrary to public policy."[58] The Defendant contends that the Plaintiff, as a common carrier, "owes an extraordinary duty of care that cannot be delegated or assigned" under the indemnity provisions of the Sidetrack Agreement.[59] The Plaintiff now moves for summary judgment as to this "affirmative defense." It argues that public policy does not bar its claim for indemnification here because it was acting as a private contracting party, and not as a common carrier.

"Generally speaking, an agreement to indemnify a party against his own negligence is not void as against public policy."[60] However, under Georgia law, "[c]ommon carriers . . . are bound to use extraordinary diligence, and in cases of loss the presumption of law is against them, and no excuse avails them unless the loss was occasioned by the act of God or the public enemies of the state."[61] From this, Georgia courts have concluded that public policy precludes the enforcement of contracts indemnifying a common carrier from liability for its own negligence.[62] "It is pertinent to note the distinction between cases

---

[58] Am. Answer, at 28.

[59] *Id.*

[60] *Louisville & N. R. Co. v. Atl. Co.*, 66 Ga. App. 791 (1942).

[61] O.C.G.A. § 46-9-1.

[62] *See Louisville & N. R. Co.*, 66 Ga. App. at 791 ("An express contract entered into by the carrier and the passenger, under the terms of which the carrier is released from all liability to the passenger for personal

-19-

involving indemnity where a railroad company is performing a service to the public as a common carrier and where it is acting only in a private capacity, that is, in an undertaking which it is not required by the law to render."[63] "[W]here a railroad undertakes to contract for indemnity against its negligence, not criminal in its nature, when rendering a service which it is not required by law to render to the public in its capacity as a common carrier, such a contract is not against public policy and is enforceable."[64]

The Plaintiff argues that it was acting in its private capacity, and not as a common carrier, when it entered into the Sidetrack Agreement with the Defendant. Thus, according to the Plaintiff, it could contract for indemnity against its own negligence. The Defendant, in contrast, argues that summary judgment on this issue is not warranted because, depending upon the facts, public policy may preclude indemnification of the Plaintiff.[65] The Defendant contends that, while a railroad company can contract for indemnity of its joint negligence in general, it cannot do so while performing its duty as a common

---

injuries received while a passenger on such freight train, is, in effect, a contract by which the carrier undertakes to relieve itself from the consequences of the negligence of itself and servants, and cannot be enforced.").

[63]    *Id.*

[64]    *Id.*

[65]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 17.

carrier.[66] The Defendant asserts that the evidence may show that the Burchfield accident was caused by issues with the AEX 7136's handbrake, and that these issues had developed before the Plaintiff delivered the car to the Defendant's sidetrack.[67] The Defendant asserts that, as a common carrier, the Plaintiff was under a duty to ensure the efficiency of the handbrakes on its railcars. Thus, according to the Defendant, "a jury could conclude that CSXT violated its duties as a common carrier" – duties for which it cannot be indemnified under public policy.[68]

The Court agrees that, as a matter of law, indemnification of the Plaintiff under Section 15.1 for the parties' joint or concurring negligence does not violate public policy. "It is the general rule that a railroad, when not acting as a common carrier, may contractually excuse itself from liability for its negligence, and this is so even in the face of statutorily imposed absolute liability."[69] Under Georgia law, a railroad is acting in its private capacity, and not as a common carrier, when it contracts to provide rail services on a private

---

[66]     *Id.* at 19.

[67]     *Id.* at 17.

[68]     *Id.* at 18.

[69]     *Scott Truck Line, Inc. v. Chicago, R.I. & P.R. Co.*, 312 F. Supp. 511, 514 (N.D. Ill. 1970).

sidetrack.[70] With such an arrangement, "[t]he interest of the public can not in any way be seriously affected."[71] The Defendant tries to distinguish the cases relied upon by the Plaintiff, arguing that in such cases, the indemnitee's negligence occurred entirely in the context of the private sidetrack arrangements. In contrast, according to the Defendant, the Plaintiff's negligence here resulted from a violation of its duties as a common carrier.[72] The Defendant contends that a common carrier is required by law to ensure that railcars are equipped with efficient handbrakes, and that the evidence may show in this case that the Plaintiff's railcar, AEX 7136, had a defective handbrake before entering the Defendant's sidetrack, and that this dangerous defect resulted in Mr. Burchfield's injuries. According to the Defendant, the Plaintiff cannot be indemnified for such negligence as a common carrier, even if the injury ultimately occurred on a private sidetrack.

However, a railroad can indemnify itself from liability, even from absolute liability imposed upon it as a common carrier, when it enters into an

---

[70]    *See Cent. of. Ga. Ry. Co. v. Woolfolk Chem. Works, Ltd.*, 122 Ga. App. 789, 798-99 (1970) (noting that a railroad is not under a duty as a common carrier in the context of a sidetrack "where a private business desires the railway to construct a spur or sidetrack to its establishment over its private property so that more conveniently and economically it may handle its shipments").

[71]    *Id.* at 799.

[72]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 17-18.

agreement in its private capacity.[73] Other federal courts have concluded that "a contract releasing a railroad from liability [is] not void as against public policy, notwithstanding a statute imposing absolute liability."[74] There is "no reason why a railroad company may not, when acting in its private capacity, relieve itself from an absolute liability imposed by statute as well as from liability resulting from negligence."[75]

The decision of the Eighth Circuit Court of Appeals in *Colorado Milling & Elevator Company v. Terminal Railroad Association of St. Louis* is instructive. There, a railroad sought recovery under a sidetrack agreement it had with a company.[76] The railroad sought reimbursement for money it paid pursuant to a judgment obtained against it by a company employee who had been injured.[77] This employee had been injured due to an inefficient

---

[73]    *See Colo. Milling & Elevator Co. v. Terminal R.R. Ass'n of St. Louis*, 350 F.2d 273, 278 (8th Cir. 1965) ("This contract was made by the Railroad in its private capacity rather than as a common carrier and it could, therefore, relieve itself by indemnity, not only for its own negligence if the contract was sufficiently specific, but also against absolute liability as imposed by the statute.").

[74]    *Id.* at 278-79 (citing *Sunlight Carbon Co. v. St. Louis & S.F.R. Co.*, 15 F.2d 802, 805 (8th Cir. 1926)).

[75]    *Sunlight Carbon*, 15 F.2d at 805.

[76]    *Colo. Milling*, 350 F.2d at 274.

[77]    *Id.*

handbrake on a boxcar.[78] The court concluded that indemnification of the railroad did not violate public policy.[79] It explained that "there is no reason why it could not contract with the Industry to indemnify itself against the occurrence of any such loss while the car was being moved by Industry."[80] "This contract was made by the Railroad in its private capacity rather than as a common carrier and it could, therefore, relieve itself by indemnity, not only for its own negligence if the contract was sufficiently specific, but also against absolute liability as imposed by the statute."[81]

Similarly, the Court finds that public policy does not preclude indemnification of the Plaintiff. Mr. Burchfield's injury occurred while the AEX 7136 was in the Defendant's possession and being moved by the Defendant and its employees pursuant to the Sidetrack Agreement.[82] Even if federal law imposes an absolute duty on the Plaintiff to maintain efficient handbrakes, the Plaintiff entered into the Sidetrack Agreement with the Defendant in its private capacity. Mr. Burchfield's injuries arose out of this private relationship

---

[78] *Id.*

[79] *Id.* at 278-79.

[80] *Id.* at 278.

[81] *Id.*

[82] Am. Answer ¶ 23 (admitting that Mr. Burchfield and Mr. Turk were moving railcars, including the AEX 7136, on the Defendant's private sidetrack at the time of the accident).

between the Plaintiff and the Defendant. The Plaintiff entered into this contract with the Defendant to provide rail services in a private capacity – it was under no public duty to provide these services. Although the Plaintiff, as a common carrier, was obligated to ensure the efficiency of its handbrakes, it was under no obligation to the public to provide its railcars or rail services to the Defendant. Thus, it can indemnify itself for injuries resulting from this private undertaking, even if it nonetheless may have violated an absolute duty as a common carrier regarding its handbrakes.

The Defendant's arguments distinguishing *Colorado Milling* are unpersuasive. The Defendant argues that the court in that case found that the railroad was entitled to indemnity only "because its underlying liability was the result of a violation of a strict liability statute for which it could, and did, contract for indemnification." [83] However, this argument conflates two different holdings by the court. In an earlier section of its opinion, the court explains that it agreed with the trial court's conclusion that the indemnitor failed to provide evidence of negligence on the railroad's part. [84] It further explained that, despite the lack of such evidence, a finding of negligence was

---

[83]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 20.

[84]     *Colo. Milling*, 350 F.2d at 275 ("Industry's primary attack is leveled at the District Court's ruling that the evidence failed to show any negligence by the Railroad.").

T:\ORDERS\14\CSX Transportation\mpsjtwt.docx

not necessary because the railroad was strictly liable.[85] In a separate part of its opinion, the court concluded that the parties' private sidetrack agreement could indemnify the railroad for liability arising out of a defective handbrake, including its own negligence, because it was not acting as a common carrier.[86] Thus, the Court finds the Defendant's argument unpersuasive.

Moreover, the purpose behind this public policy bolsters this conclusion. Georgia courts have justified voiding indemnification agreements when a railroad is acting as a common carrier because the interest of the public may be "seriously affected."[87] Such a public interest is not seriously affected here. Under the terms of the Sidetrack Agreement, "the public will be protected, since either the defendant or the plaintiff will have to pay any valid claims" resulting from this incident.[88] The indemnification agreement in Section 15.1 does not leave "members of the public, passengers, or other individuals for whose benefit" these common carrier duties were enacted without any remedy.[89] Under the terms of the Sidetrack Agreement, either the Plaintiff or

---

[85]    *Id.* at 275-76.

[86]    *Id.* at 278.

[87]    *Cent. of Ga. Ry. Co. v. Woolfolk Chem. Works, Ltd.*, 122 Ga. App. 789, 799 (1970).

[88]    *Chicago R. I. & P. R. Co. v. Chicago, B. & Q. R. Co.*, 301 F. Supp. 72, 79 (N.D. Ill. 1969), *aff'd*, 437 F.2d 6 (7th Cir. 1971).

[89]    *Id.* at 78.

the Defendant, or both, will have to provide a remedy.

Finally, the Defendant argues that the indemnification agreement would violate public policy if the Plaintiff's negligent conduct was found to be "criminal in nature."[90] The Court agrees. The Georgia Court of Appeals has explained that a railroad can contract for indemnity against its negligence when it is not acting as a common carrier and when such negligence is "not criminal in its nature."[91] Thus, if the Plaintiff is ultimately found to have been criminally negligent, then public policy would preclude indemnification. However, absent such a finding that the Plaintiff acted with criminal negligence, public policy does not preclude indemnification in the case of the parties' joint or concurring negligence.

### D. Prejudgment Interest

Finally, the Plaintiff moves for summary judgment as to the Defendant's "affirmative defense" regarding prejudgment interest.[92] In its Twelfth Affirmative Defense in its Amended Answer, the Defendant asserts that the Plaintiff's claim for prejudgment interest is premature.[93] Specifically, the

---

[90] Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 21-22.

[91] *Louisville & N. R. Co. v. Atl. Co.*, 66 Ga. App. 791 (1942).

[92] Pl.'s Mot. for Partial Summ. J., at 21.

[93] Am. Answer, at 28.

T:\ORDERS\14\CSX Transportation\mpsjtwt.docx

Defendant contends that the Plaintiff's claim for prejudgment interest is premature because the Plaintiff "has never suffered a loss from a claim or final judgment, other than a judgment resulting from CSXT's sole negligence and defense thereof."[94] The Plaintiff argues that the issue of prejudgment interest is not premature for adjudication at this stage.[95] According to the Plaintiff, this argument mirrors the Defendant's previous argument in its Motion to Dismiss, rejected by this Court, that the Plaintiff's claims are not ripe until it proves that the Defendant was partially at fault for the Burchfield accident.[96]

Georgia law applies to the Plaintiff's claim for prejudgment interest. "In diversity cases, the availability and amount of prejudgment interest is ordinarily governed by state law."[97] Georgia law allows for the recovery of prejudgment interest for breach of contract.[98] O.C.G.A. § 7-4-15 provides, in relevant part that "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party

---

[94]     *Id.*

[95]     *Id.*

[96]     Pl.'s Mot. for Partial Summ. J., at 22.

[97]     *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007).

[98]     *See* O.C.G.A. § 13-6-13 ("In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery.").

shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand. In case of promissory notes payable on demand." [99] "Under this statute, prejudgment interest—which flows automatically from a liquidated demand—is to be awarded upon a judgment for a liquidated amount."[100] This prejudgment interest is "allowable on all liquidated demands where the amount owed is fixed and certain."[101] In such cases, a trial court should award prejudgment interest as long as there is a demand for it prior to the entry of final judgment.[102] "The only requirement for a prejudgment interest award upon a liquidated damages claim is a demand."[103]

The Defendant first argues that the Plaintiff's demand for prejudgment interest was not payable at the time it was made.[104] The Defendant, citing Georgia case law, argues that interest does not begin to accrue from a demand until the party becomes "liable and bound to pay."[105] However, in *Hendricks*

---

[99]    O.C.G.A. § 7-4-15.

[100]    *Crisler v. Haugabook*, 290 Ga. 863, 864 (2012).

[101]    *Hendricks v. Blake & Pendleton, Inc.*, 221 Ga. App. 651, 652 (1996).

[102]    *Crisler*, 290 Ga. at 864.

[103]    *Id.*

[104]    Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 22.

[105]    *Id.* at 23 (quoting *Hendricks v. Blake & Pendleton, Inc.*, 221 Ga.

*v. Blake & Pendleton, Inc.*, the case the Defendant relies upon, the court explains that a party becomes liable and bound to pay the debt once it becomes a surety and the other party demands payment.[106] In that case, this occurred when the complaint in the action was filed.[107] Thus, if the Defendant is ultimately found to owe a duty of indemnification to the Plaintiff in this case, then the Plaintiff may also be entitled to prejudgment interest from the date of this claim.

The Defendant next argues that prejudgment interest is an issue for the jury.[108] The Defendant correctly points out that the Plaintiff conflates two separate statutes governing prejudgment interest.[109] In the Amended Complaint, the Plaintiff seeks prejudgment interest under O.C.G.A. § 13-6-13.[110] However, in its Motion, the Plaintiff's argument largely focuses on

---

App. 651, 652 (1996).

[106]     *Hendricks*, 221 Ga. App. at 484 ("Hendricks individually did not become liable and bound to pay the debt until after he became the surety and Blake demanded payment solely from him.").

[107]     *Id.*

[108]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 24-25.

[109]     *Id.*

[110]     Am. Compl., at 23 ("CSXT respectfully prays . . . that CSXT be awarded prejudgment interest from the date of General Mills's breach to the date of judgment, pursuant to O.C.G.A. § 13-6-13.").

O.C.G.A. § 7-4-15.[111] "Prejudgment interest on unliquidated damages in a breach of contract action is governed by O.C.G.A. § 13–6–13."[112] In contrast, prejudgment interest on liquidated damages in such an action is governed by O.C.G.A. § 7-4-15.[113] This distinction is important. "The award of prejudgment interest under section 13–6–13 is a matter for the jury's discretion; in contrast, an award of prejudgment interest is made by the judge as a matter of law under section 7–4–15."[114] "The rule is that interest *must* be awarded on a liquidated sum from the time the liability arises, OCGA § 7–4–15 (Code Ann. § 57–110); and that the jury *may* award interest until the time of recovery 'in all cases where an amount ascertained would be the damages at the time of the breach.' OCGA § 13–6–13 (Code Ann. § 20–1408)."[115] The Plaintiff cannot introduce a new theory of recovery at this stage of the litigation. Since the Plaintiff seeks recovery of prejudgment interest under O.C.G.A. § 13–6–13, the decision of whether such interest should be awarded, and how much, is a question for the jury. Consequently, the Plaintiff is not entitled to summary judgment on this

---

[111]    Pl.'s Mot. for Partial Summ. J., at 21-24.

[112]    *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 835 (11th Cir. 1989).

[113]    *Wheels & Brakes, Inc. v. Capital Ford Truck Sales, Inc.*, 167 Ga. App. 532, 534 (1983).

[114]    *Am. Family Life Assur. Co.*, 885 F.2d at 835-36.

[115]    *Wheels & Brakes*, 167 Ga. App. at 534 (emphasis added).

issue.[116]

## IV. Conclusion

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment [Doc. 102] is GRANTED in part and DENIED in part.

SO ORDERED, this 14 day of June, 2019.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[116]    To the extent that the Defendant argues that the Plaintiff "has never suffered a loss from a claim or final judgment, other than a judgment resulting from CSXT's sole negligence and defense thereof," the Court finds such an argument unpersuasive. This mirrors the argument raised by the Defendant in its previous Motion to Dismiss, which this Court rejected.