IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CSX TRANSPORTATION, INC.,

    Plaintiff,

       v.

GENERAL MILLS, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-201-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Plaintiff's Motion for Partial Summary Judgment [Doc. 183] and the Defendant's Cross-Motion for Partial Summary Judgment [Doc. 187]. The Parties have filed additional motions in the intervening time, including the Defendant's Motion to Exclude Opinion Testimony of Plaintiff's Expert Samuel Gualardo [Doc. 235], the Defendant's Motion to Exclude Standard-of-Care Opinion Testimony of Plaintiff's Expert Brian Heikkila [Doc. 236], the Plaintiff's Motion for Partial Summary Judgment [Doc. 237], and the Defendant's Motion for Summary Judgment [Doc. 238]. For the reasons set forth below, the Court GRANTS the Defendant's Cross-Motion for Partial Summary Judgment [Doc. 187] and denies all of the remaining motions as moot.

## I. Background

This case arises out of a workplace accident in which Douglas Burchfield, an employee of the Defendant General Mills, Inc. ("General Mills"), sustained serious

injuries at a General Mills processing plant in Covington, Georgia. (Pl.'s Statement of Undisputed Material Facts ¶¶ 8-9.) On the day of the accident, Mr. Burchfield and a fellow employee, Rodney Turk, were using a General Mills trackmobile to move, or "switch," railcars at the Covington plant. After the pair moved railcar AEX 7136 into position and uncoupled it from the trackmobile, it rolled down the sidetrack, collided with the trackmobile and another railcar, and then ran over Mr. Burchfield. On June 1, 2007, Mr. Burchfield filed a personal injury lawsuit against CSX Transportation, Inc. ("CSX") and the owner of railcar AEX 7136. (*Id.* ¶ 10.) General Mills was not a party to the *Burchfield* litigation[1] and made only limited appearances related to discovery undertaken in the case. (*Id.* ¶ 11.) By letter dated June 18, 2007, CSX tendered the defense of the lawsuit to General Mills, but the latter refused this demand. (*Id.* ¶ 12.)

The first trial in 2009 resulted in a verdict and judgment in favor of CSX. The judgment was reversed  by the Court of Appeals, and the case was remanded for a new trial. On April 19, 2012, a second jury returned a verdict finding that Mr. Burchfield was not a contributing cause of his injuries, that Mr. Burchfield was zero percent negligent, and CSX was 100 percent negligent in causing the accident. (Def.'s Statement of Undisputed Material Facts ¶ 5.) The jury awarded Mr. Burchfield a total of $20,559,004. Judgment was entered in favor of Mr. Burchfield. While on

---

[1] The phrase "*Burchfield* litigation" and variations thereof refers to case number 1:07-CV-1263-TWT filed in the United States District Court for the Northern District of Georgia.

appeal, the case was settled for $16 million. (Pl.'s Statement of Undisputed Material Facts ¶ 21.) During the trial, CSX presented evidence and argued that Mr. Burchfield was negligent because he (1) failed to set the handbrake on railcar AEX 7136, (2) failed to perform a "push-pull" or "bump" test with the trackmobile, (3) failed to use chocks/blocks or set derailers, and (4) allowed Mr. Turk to operate the trackmobile even though he had not completed classroom training. (Def.'s Statement of Undisputed Material Facts ¶ 4.) The Court had previously ruled on summary judgment that CSX could not raise General Mill's negligence as a defense because it was untimely and not properly supported by expert testimony. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 3.)

After the second *Burchfield* verdict, CSX made a demand for indemnification from General Mills for the full amount of the judgment pursuant to the Parties' Private Sidetrack Agreement ("Sidetrack Agreement"). (Pl.'s Statement of Undisputed Material Facts ¶¶ 17, 20, 22.) Executed on February 9, 1989, the Sidetrack Agreement specifies the terms for the construction, maintenance, and use of a private sidetrack for the tender and receipt of rail freight traffic at the Covington plant. (*Id.* ¶¶ 1-2.) Section 15.1 provides General Mills "the right to switch with its own trackmobile or locomotive power over [its] segment of the sidetrack." (Am. Compl., Ex. A.) General Mills further agreed in this section to:

> assume[] all risk of loss, damage, cost, liability, judgment and expense, (including attorneys' fees) in connection with any personal injury to . . . any persons . . . that may be sustained or incurred in connection with,

or arising from or growing out of, the operation of [General Mills']
trackmobile or locomotive power upon said Sidetrack.

(*Id.* (emphasis omitted).) Section 11, meanwhile, contains a general indemnity

provision, which states in relevant part:

> Except as otherwise provided herein, any and all damages, claims . . .
> causes of action suits, expenses . . . judgments and interest whatsoever
> . . . in connection with injury to . . . any person . . . arising out of or
> resulting directly or indirectly from the . . . use . . . of the Sidetrack shall
> be divided between the parties as follows:
>
> (A) Each party shall indemnify and hold the other party harmless from
> all losses arising from the indemnifying party's willful or gross
> negligence, its sole negligence and/or its joint or concurring negligence
> with a third party.
>
> (B) The parties agree to jointly defend and bear equally between them
> all losses arising from their joint or concurring negligence.

(*Id.*) Mr. Burchfield's accident occurred after General Mills began conducting its own

switching operations with its own trackmobile at the Covington plant. (Pl.'s

Statement of Undisputed Material Facts ¶¶ 7-8.)

Ultimately, General Mills refused each of CSX's demands for indemnification.

On January 23, 2014, CSX instituted this breach of contract action against General

Mills. (*Id.* ¶¶ 19, 20, 23, 24.) CSX originally claimed that it should be indemnified

under Section 15 of the Sidetrack Agreement "without regard to who ultimately was

determined to be at fault" for the accident. (Compl. ¶ 56.) However, the Court rejected

this argument, holding that Section 15 "does not require [General Mills] to indemnify

[CSX] for a judgment where the latter, but not the former, was found negligent." *CSX

Transp., Inc. v. General Mills, Inc.*, 2015 WL 468682, at *3 (N.D. Ga. Feb. 3, 2015),

*rev'd on other grounds*, 846 F.3d 1333 (11th Cir. 2017); *see also CSX Transp., Inc. v. General Mills, Inc.*, 2017 WL 4472787, at *7 (N.D. Ga. Oct. 6, 2017). CSX's two remaining claims—Counts II and III of the Amended Complaint—both require some negligence on the part of General Mills to trigger indemnification under the Sidetrack Agreement. (Am. Compl. ¶¶ 64-65, 74.)

Now pending are the Parties' cross-motions for partial summary judgment, which ask the Court to apply the "vouchment" rule to the *Burchfield* judgment. Vouchment is a procedure by which a defendant calls upon a third party—often an indemnitor—to defend against the plaintiff's claims, as CSX did by its June 18, 2007 letter to General Mills. According to CSX, because General Mills was vouched into the *Burchfield* case, it is estopped from raising the issues of CSX's litigation strategy and decision to settle with Mr. Burchfield in this case. (Pl.'s Br. in Supp of Pl.'s Mot. for Partial Summ. J., at 2.) Therefore, CSX argues that the Thirteenth and Fifteenth Affirmative Defenses should fail as a matter of law. (*Id.*) On the other hand, General Mills argues that CSX is bound by the *Burchfield* judgment that CSX was 100 percent negligent, Mr. Burchfield was zero percent negligent, and General Mills was zero percent negligent in causing the accident. (Def.'s Br. in Supp. of Def.'s Cross-Mot. for Partial Summ. J., at 2-3.) If General Mills is correct in its application of the vouchment rule, then it would be impossible for CSX to succeed on its remaining claims, and the Court thus takes General Mills' Cross-Motion for Partial Summary Judgment under consideration first.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.   Discussion

Relying on the vouchment rule, General Mills argues that it is entitled to summary judgment on all facts passed upon and settled in the *Burchfield* lawsuit, including the relative negligence of CSX, Mr. Burchfield, and General Mills. (Def.'s Br. in Supp. of Def.'s Cross-Mot. for Partial Summ. J., at 2.) This is General Mills' fourth attempt to bar CSX from claiming that General Mills contributed to Mr. Burchfield's accident through negligent training and supervision. Already in this lawsuit, the Court has denied General Mills' Motions to Dismiss and for Judgment on the Pleadings [Docs. 68, 86] based on collateral estoppel, ripeness, and contractual indemnification principles. *CSX Transp.*, 2017 WL 4472787, at *3-4; *CSX Transp.,*

6

*Inc. v. General Mills, Inc.*, 2018 WL 3458557, at *3-5 (N.D. Ga. July 18, 2018). On the last of these motions, the Court admonished General Mills for "attempting to repackage the same collateral estoppel argument that this Court has previously rejected." *CSX Transp.*, 2018 WL 3458557, at *4. However, in the vouchment doctrine, the Defendant appears to have finally hit on a viable preclusion argument.

Vouchment is an "ancient common-law device" that "permits the vouching of another into court to defend a suit, where the defendant claims that the vouchee would in turn be responsible to him for any recovery had[.]" *Smith v. Transamerica Ins. Co.*, 218 Ga. App. 839, 839-40 (1995) (citation omitted). This principle has been codified in O.C.G.A. § 9-10-13, which provides: "Where a defendant may have a remedy over against another person and vouches him into court by giving notice of the pendency of the action, the judgment rendered therein shall be conclusive upon the person vouched, as to the amount and right of the plaintiff to recover."[2] The purpose is to bind the vouchee (i.e., General Mills) on the question of the defendant-voucher's (i.e., CSX) liability to the original plaintiff (i.e., Mr. Burchfield) and the amount of such liability, leaving for future determination only the question whether the vouchee is in fact liable to the defendant-voucher. *Southern Ry. Co. v. Acme Fast Freight, Inc.*, 193 Ga. 598, 601 (1942). "[T]the vouchee's liability to the defendant cannot be determined in [the first] action but a separate action must be filed by the

---

[2] The term "vouch" as used in the context means "to call into court to warrant and defend, or to make good a warranty of title, as in a fine and recovery." *Loeb v. May*, 186 Ga. 742, 744 (1938) (citation omitted).

defendant to determine whether the vouchee is liable to the defendant." *Hardee v. Allied Steel Bldgs., Inc.*, 182 Ga. App. 587, 587 (1987).

"Vouching helps to avoid duplicative litigation and the risk of inconsistent results in adjudicating indemnification claims." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1138 (5th Cir. 1991). To that end, the vouchment statute "gives substantive rights insofar as it states the conclusive effect of a judgment upon a person vouched in but not a party[.]" *Hardee*, 182 Ga. App. at 588. While a vouchee is allowed to ignore the vouchment, "she does so at her peril because the statute makes the judgment binding on her, and by the facts may reflect her own liability to the defendant." *Id.* This feature distinguishes vouchment from collateral estoppel, which binds only the same parties and their privies to matters adjudicated in an earlier proceeding. *See id.* However, the vouchment procedure has been largely abandoned in favor of modern impleader rules, which require a putative indemnitor to participate as a party and thus avoid the expense and delay of a second lawsuit. *Id.* (noting third-party practice "is supplementary, more extensive in scope, and in the main is a more adequate procedure [than vouchment] since one lawsuit is made to serve the function of two") (citation omitted).

As explained above, the Parties agree that CSX properly vouched General Mills into the *Burchfield* case, and that General Mills refused to participate in its defense. The jury then returned a verdict finding Mr. Burchfield zero percent at fault and CSX 100 percent at fault for his injuries. Jury Verdict at 1, *Burchfield v. CSX Transp.,*

*Inc.*, No. 1:07-cv-1263-TWT (N.D. Ga. Apr. 19, 2012). Earlier in the case, summary judgment had been awarded against CSX on the question of General Mills' negligence because CSX did not timely raise this defense or introduce expert testimony on the applicable standard of care. *Burchfield v. CSX Transp., Inc.*, No. 2009 WL 1405144, at *9-11 (N.D. Ga. May 15, 2009). General Mills now argues that these factual and legal findings are settled in this subsequent action. (Def.'s Br. in Supp. of Def.'s Cross-Mot. for Partial Summ. J., at 16.) CSX counters that vouchment (1) binds only the vouchee, and not the voucher, to a prior judgment and (2) does not give preclusive effect to factual findings and legal conclusions underlying that judgment. (Pl.'s Br. in Opp'n to Def.'s Cross-Mot. for Partial Summ. J., at 5.) For the reasons below, the Court determines that CSX is mistaken on both counts.

## A.  Whether Vouchment Binds Both the Vouchee and the Voucher

CSX's first argument is that vouchment does not give General Mills, as the vouchee, the right to obtain issue preclusion against CSX, as the voucher. (*Id.* at 5.) According to CSX, "vouchment cases speak universally in terms of binding 'the vouchee'—rather than binding 'the voucher' or both 'parties.'" (*Id.* at 7.) The vouchment statute arguably supports this reading because it makes a prior judgment conclusive "upon the person vouched" (i.e., the vouchee) but is silent as to any effect on the voucher. (*Id.* at 7-8 (quoting O.C.G.A. § 9-10-13) (emphasis omitted).) In response, General Mills notes that CSX's one-sided interpretation would create duplicative litigation and inconsistent results by allowing the voucher to selectively

invoke issue preclusion for his sole benefit. (Reply Br. in Supp. of Def.'s Cross-Mot. for Partial Summ. J., at 5-6.) General Mills also offers *McArthor v. Ogletree*, 4 Ga. App. 429 (1908), as evidence that Georgia courts apply vouchment to bind both the vouchee and the voucher to an earlier judgment. (*Id.* at 6-7.)

To resolve this dispute, the Court turns to the foundational Georgia Supreme Court decisions in *Western & Atlantic Railroad v. City of Atlanta*, 74 Ga. 774 (1885), and *Faith v. City of Atlanta*, 78 Ga. 779 (1887). In *Western & Atlantic Railroad*, the city of Atlanta was sued by a pedestrian who had fallen and injured himself at a railroad crossing. The city then vouched in the railroad company to defend the lawsuit. The pedestrian, Montgomery, recovered a judgment against the city for $629. In a second lawsuit, the city recovered an identical judgment against the railroad company based on its negligent maintenance of the crossing. During the second trial, the railroad company sought to introduce evidence that Montgomery, through reasonable care and caution, could have avoided his injuries, even though the issue of his negligence had been settled in the first action. The Georgia Supreme Court held that this evidence was properly excluded because "*both the city and the railroad company were concluded by [the earlier] verdict*, and should not now be heard to say that Montgomery, by the exercise of reasonable care and caution, could have avoided the injuries which he received." *Id.* at 778 (emphasis added).

About two years later, the city of Atlanta faced another personal injury lawsuit, this time stemming from street excavations made by an individual named Faith. The

city notified Faith about the lawsuit, asked him to participate in the defense, and, following an adverse verdict, filed suit against him to recover the damages paid to the injured plaintiff. Citing its recent *Western & Atlantic Railroad* decision, the Georgia Supreme Court upheld the city's right to maintain this action against Faith:

> If, as cannot be questioned here, [Faith] had notice of the pendency of the suit against the city, and was requested to come forward and defend the same, *the judgment of the injured party against the city would be conclusive between the city and him*, as to the right of the party injured to recover, and as to the amount which might be recovered against him.

*Faith,* 78 Ga. at 780 (emphasis added). Echoing *Faith,* the Georgia Court of Appeals in *McArthur* similarly described prior judgments as being conclusive "between" the vouchee and the voucher. *McArthur,* 4 Ga. App. at 433-34 (where a company vouches one of its engineers into a lawsuit, and the evidence shows that the engineer committed the alleged negligent act, "a judgment for the plaintiff . . . establishes*, as between the engineer and the company*, the fact that he was negligent, and that the negligence caused the injury, and that the damages were the sum found") (emphasis added).

These decisions cut against CSX's argument that a voucher may unilaterally bind a vouchee to favorable findings and contest unfavorable ones in an underlying case. Rather, as stated in *Western & Atlantic Railroad*, a previous judgment concludes both the vouchee and the voucher as to the right and amount of the plaintiff to recover, regardless of whether that judgment supports the voucher's

indemnification claim against the vouchee. This interpretation is consistent with the

First Restatement of Judgments § 107:

> In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against . . . the indemnitee, *both are bound as to the existence and extent of the liability of the indemnitee*, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense[.]

Restatement (First) of Judgments § 107 (Am. L. Inst. 1942) (emphasis added). "In

actions between the indemnitor and the indemnitee, *the indemnitee is subject to the*

*burdens, as well as entitled to the benefits, of the rules of res judicata* with reference

to matters determined in an action brought . . . by the injured person." *Id.* § 107 cmt.

h (emphasis added). Further, binding both parties serves the main objectives of

vouchment: to eliminate the expense and delay of relitigation and avoid inconsistent

results in indemnification cases. *See Universal Am. Barge*, 946 F.2d at 1138; *SCAC*

*Transport (USA) Inc. v. S.S. Danaos*, 845 F.2d 1157, 1162 (2d Cir. 1988).

Nothing in CSX's cited authorities persuades the Court to depart from this rule

as articulated by the Georgia Supreme Court and the First Restatement. First, CSX

argues that the vouchment statute expressly binds the vouchee, but not the voucher,

to a prior judgment. (Pl.'s Br. in Opp'n to Def.'s Cross-Mot. for Partial Summ. J., at

7-8.) But O.C.G.A. § 9-10-13 "is simply an adaptation of the language employed by

the [Georgia] Supreme Court" in *Western & Atlantic Railroad* and *Faith. Usry v.*

*Hines-Yelton Lumber Co.*, 176 Ga. 660, 667 (1933) (citation omitted). Because the

statute is "merely a statement of a well-known common-law principle . . . it was not the intention of the codifiers by inserting it in the Code to hedge it about with any unusual limitations or give to it any additional scope." *Id.*; *see also McArthor*, 4 Ga. App. at 431 ("This Code section, while not exhaustive, states the law governing such cases with fair accuracy."). Therefore, courts must examine the case law and not just the statute to understand the function and effect of vouchment on the voucher. As described above, that case law puts CSX squarely on the hook for the *Burchfield* judgment, even in this indemnification action against General Mills.

Second, CSX references three Georgia decisions to argue that vouchment cases speak "universally" in terms of binding the vouchee rather than the voucher. (Pl.'s Br. in Opp'n to Def.'s Cross-Mot. for Partial Summ. J., at 7.) But that was the sole question presented in each of the cited decisions,[3] and it appears that no Georgia court has ever considered whether an earlier judgment has preclusive effect on a voucher in an action against his vouchee. Nonetheless, other state courts have addressed this question, reaching the same conclusion as this Court that estoppel runs against both the vouchee and the voucher. *See, e.g.*, *Hoskins v. Midland Ins. Co.*,

---

[3] *See Southern Ry. Co. v. Acme Fast Freight*, 193 Ga. 598, 601-02 (1942) (holding a prior adjudication between the plaintiff and the voucher does not conclude the vouchee on the question of its liability to the voucher); *Byne v. Mayor of Americus*, 6 Ga. App. 48 (1909) (barring the vouchee from relitigating issues that had already been decided in the plaintiff's action against the voucher); *McArthor*, 4 Ga. App. 429 (where tenants recovered a judgment against their building owners following a building collapse, the owners were entitled to a directed verdict against their contractor because there was no dispute that the contractor was responsible for all construction work leading to the collapse).

395 So.2d 1159, 1161 (Fla. App. 1981) (adopting the rule that "an indemnitee, in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered") (citation omitted); *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405 (1965) (applying the same rule); 24 A.L.R.2d 329, § 2 (collecting cases). For the foregoing reasons, the Court rejects CSX's first argument to limit application of the vouchment rule to its indemnification claims.

## B. Whether Vouchment Applies to Factual Findings and Legal Conclusions in an Earlier Judgment

Next, CSX argues that vouchment applies only to the fact and amount of the voucher's liability to the plaintiff, but that it does not give preclusive effect to "all facts adjudicated in the earlier litigation." (Pl.'s Br. in Opp'n to Def.'s Cross-Mot. for Partial Summ. J., at 9.) CSX also contends that General Mills' liability could not have been determined in the first action except by its own pleadings or affirmative conduct therein. (*Id.* at 13.) Under CSX's understanding of the rule, it is allowed to litigate whether General Mills was at fault for Mr. Burchfield's injuries here, even though the Court rejected this defense during the *Burchfield* litigation. (*Id.* at 18-19.) General Mills counters that vouchment concludes all of the facts that were passed upon and settled in the underlying case, as well as any defenses that the voucher made or could have made to prevent the plaintiff's recovery. (Reply Br. in Supp. of Def.'s Cross-Mot. for Partial Summ. J., at 11.) According to General Mills, that includes the question of

14

its negligence, which had been decided on summary judgment and was "subsumed" into the final *Burchfield* judgment. (*Id.* at 12.)

Under the vouchment statute, a prior judgment against a voucher is conclusive "as to the amount and right of the plaintiff to recover." O.C.G.A. § 9-10-13; *see also Southern Ry.*, 193 Ga. at 600 ("By the terms of the [statute] . . . the vouchee thereby is bound by the previous judgment establishing the liability of the original defendant and the amount thereof[.]"); *Western & Atl. R.R.*, 74 Ga. at 778 (holding a prior verdict was conclusive as to matters that had been "passed upon and settled" in the case); *McArthur*, 4 Ga. App. at 432 (vouchment extends to "the fact of the rendition of the judgment, its amount, and the cause of action on which it was rendered[.]"). The Georgia Supreme Court has interpreted the statute to encompass "any and all defenses which the voucher or vouchee either made or could have made to prevent a recovery by the plaintiff in the former suit." *Southern Ry.*, 193 Ga. at 600. However, "the mere avouchment of a third person by a defendant to a suit, under the claim of a remedy over against him . . . does not adjudicate the validity of such claim of the voucher against his vouchee." *Transamerica*, 218 Ga. App. at 840 (emphasis and citation omitted). A second lawsuit is necessary to "determine whether the voucher's claim over against the vouchee was in fact good or bad." *Id.* (citation omitted).

The Parties disagree whether estoppel applies only to the existence of the voucher's liability, as CSX urges, or also to the factual and legal findings underlying his liability, as General Mills urges. Here again, the Court believes that General Mills

15

has the better of the argument and turns to *Western & Atlantic Railroad* for guidance. As described above, the vouchee railroad company in *Western & Atlantic Railroad* sought to defend against the voucher city's lawsuit by offering evidence that the plaintiff could have exercised reasonable care to avoid his injuries. The court refused to admit this evidence because, in the case between the plaintiff and the city, "the right of said [plaintiff] to recover, *and the question of his negligence or want of care*, had been passed upon and settled; and both the city and the railroad company were concluded by that verdict[.]" *Western & Atlantic Railroad,* 74 Ga. at 777-78 (emphasis added). Therefore, as described by the Georgia Supreme Court, vouchment concludes more than just the simple fact that the voucher is liable to the plaintiff; it extends more broadly to questions that were "passed upon and settled" in the earlier case. *Id.*

Decades later, in a holding similar to *Western & Atlantic Railroad*, the Georgia Court of Appeals barred a vouchee from raising a defense that was inconsistent with an earlier judgment against her voucher. *Byne v. Mayor of Americus*, 6 Ga. App. 48 (1909). In *Byne*, the city of Americus was sued and found liable for a building awning that fell on the sidewalk and injured several people. The city had vouched the building owner into the lawsuit and then filed suit against her to recover the amount of the judgment. In the action between the city and the building owner, the court held that the prior verdict "settled the question that the . . . awning was defectively constructed or repaired, and that the city was guilty of negligence in permitting it to remain over the sidewalk in such unsafe condition." *Id.* at 51. The building owner then argued

that the city was solely responsible for the fallen awning by allowing a group of boys to push it down. This question, the court held, was also settled by the earlier judgment because, "if the jury had believed that the unlawful conduct of the . . . boys in question had caused the injury to the plaintiff, the city would not have been liable." *Id.*

Applied here, these decisions preclude CSX from relitigating matters that were passed upon and settled in the *Burchfield* case, including that CSX was entirely and solely negligent in causing Mr. Burchfield's injuries. As part of this verdict, the jury found that many aspects of Mr. Burchfield's job performance—which CSX now claims are evidence of negligent training—were in fact not negligent.[4] The question of General Mills' fault was also adjudicated (and rejected) during the litigation and thus necessarily involved in the final verdict. *Burchfield*, 2009 WL 1405144, at *9-11. It does not matter that this question was resolved by the Court on summary judgment

---

[4] For example, in the Amended Complaint, CSX alleges that General Mills was negligent in failing to (1) "properly train employees in industry switching and trackmobile operation," (2) "provide required chocks to use on railcars not coupled to the trackmobile," (3) "prevent untrained and uncertified individuals from operating the trackmobile and participating in industry switching," (4) "employ individuals with expertise in railcar switching operations to supervise, oversee, and conduct such operations," and (5) "enforce its own safety policies regarding switching, chocking, derails, switching certification, and handbrake efficiency testing." (Am. Compl. ¶ 65.) However, CSX presented similar arguments and evidence to the *Burchfield* jury in an effort to demonstrate Mr. Burchfield's negligence, all of which must have been rejected to find Mr. Burchfield zero percent at fault for his injuries. Those arguments included that Mr. Burchfield (1) failed to set the handbrake on railcar AEX 7136, (2) failed to perform a "push-pull" or "bump" test with the trackmobile, (3) failed to use chocks/blocks or set derailers, and (4) selected Mr. Turk to operate the trackmobile despite not completing the trackmobile classroom training. (Def.'s Statement of Undisputed Material Facts ¶ 4.) The jury's findings with respect to each of these issues are binding on CSX and General Mills in this subsequent action.

rather than by the jury following trial. *See Transamerica*, 218 Ga. App. at 839 (applying vouchment to factual findings and legal conclusions on summary judgment). Vouchment extends broadly to "any and all defenses which the voucher . . . either made or could have made to prevent a recovery by the plaintiff in the former suit." *Southern Ry.*, 193 Ga. at 600. While CSX may still pursue its indemnification claims against General Mills, the basis for recovery must be consistent with the judgment that CSX was 100 percent liable and Mr. Burchfield and General Mills were zero percent liable for the accident.

Lastly, CSX contends that O.C.G.A. § 9-10-13 "does not bind an indemnitor-vouchee to prior findings of fact and conclusions of law absent some affirmative conduct on the part of the vouchee in the prior litigation." (Pl.'s Br. in Opp'n to Def.'s Cross-Mot. for Partial Summ. J., at 11.) This argument rests on a misguided interpretation of *Transamerica*, in which the Georgia Court of Appeals held that a vouchee's liability *to the voucher* can only be established by his pleadings or actual conduct in the first action. *Transamerica,* 218 Ga. App. at 840. In *Transamerica*, Smith, an insurance agent, was sued by a former customer and its employees after a medical insurance policy he procured failed to pay their medical claims. Smith vouched his errors and omissions insurer, Transamerica, into the lawsuit, and the trial court found Smith liable for the plaintiffs' damages on summary judgment. Smith then filed suit against Transamerica seeking coverage under his errors and omissions policy but lost that case on the basis of an insolvency exclusion. On appeal,

Smith argued that Transamerica was estopped from contesting its liability to Smith because the issue had already been implicitly decided in the first lawsuit. *Id.* at 839-40. The Georgia Court of Appeals rejected Smith's argument, reaffirming that "the mere avouchment of a third person by a defendant to a suit, under the claim of a remedy over against him . . . *does not adjudicate the validity of such claim of the voucher against his vouchee.*" *Id.* at 840 (emphasis in original) (citation omitted). Rather, a vouchee's liability to his voucher can only be established in the first lawsuit by his participation therein.   The court held that Transamerica was bound "by the finding of Smith's liability to the insured, and the amount of that liability, nothing more." *Id.* What CSX fails to grasp in *Transamerica* is the distinction between a vouchee's liability as to the original plaintiff's cause of action and his liability as to the voucher's cause of action. This distinction is well illustrated here. The *Burchfield* judgment established, as between CSX and General Mills, that CSX was fully liable and General Mills was not liable for Mr. Burchfield's injuries. However, it did not adjudicate whether General Mills is in turn required to indemnify CSX for its losses. General Mills was thus allowed to (successfully) argue that the Sidetrack Agreement does not—as CSX originally claimed—provide indemnification for CSX's sole negligence. *CSX Transp.*, 2015 WL 468682, at *3.

The Court's reading of *Transamerica* is further supported by *McArthor*, which used a hypothetical scenario to describe the scope of issue preclusion in vouchment cases.   In that scenario, a railroad company is sued for negligently setting fire to

property and then vouches one of its engineers to take up the defense. In the case between the plaintiff and the railroad company, if the proof shows that the engineer necessarily committed the alleged negligent act, then "a judgment for the plaintiff in that suit establishes, as between the engineer and the company, *the fact that he was negligent, and that the negligence caused the injury*, and that the damages were the sum found[.]" *McArthor,* 4 Ga. App. at 433-34. (emphasis added). Conversely, if the pleadings and evidence in the first case leave doubt as to whose negligence caused the damage, then "the judgment would not per se bind [the engineer]." *Id.* So, a prior judgment can determine the relationships and liabilities between the voucher and the vouchee as to the plaintiff's cause of action, where "those relationships and liabilities are *necessarily involved* in the first suit and in the judgment rendered therein." *Id.* at 432 (emphasis added). There is no doubt that General Mills' liability for the accident and Mr. Burchfield's resulting injuries was necessarily involved in the first lawsuit.

For the foregoing reasons, the Court agrees with General Mills' application of the vouchment rule and concludes that the *Burchfield* judgment is binding on both Parties to this action—in particular, the finding that CSX was 100 percent negligent, Mr. Burchfield was zero percent negligent, and General Mills was zero percent negligent in causing Mr. Burchfield's injuries. In so holding, the Court leaves no room for CSX to succeed on its remaining claims, both of which require some negligence on the part of General Mills to obtain indemnification. (Am. Compl. ¶¶ 61-79.) *See CSX*

*Transp.*, 2015 WL 468682, at *3-4 (holding Section 15 of the Sidetrack Agreement "does not require [General Mills] to indemnify [CSX] for a judgment where the latter, but not the former, was found negligent"). Indeed, CSX admitted at oral argument that General Mills' Cross-Motion for Partial Summary Judgment "goes to the entire case" and, if successful, would "effectively estop us from moving forward." (Oral Arg. Tr. at 4:5-8.) General Mills is thus entitled to summary judgment on Counts II and III of the Amended Complaint, and the Court need not reach CSX's Motion for Partial Summary Judgment or any other motions pending in this case.

## IV. Conclusion

The Court GRANTS the Defendant's Cross-Motion for Partial Summary Judgment [Doc. 187]. The Court DENIES as moot the Plaintiff's Motion for Partial Summary Judgment [Doc. 183], the Defendant's Motion to Exclude Opinion Testimony of Plaintiff's Expert Samuel Gualardo [Doc. 235], the Defendant's Motion to Exclude Standard-of-Care Opinion Testimony of Plaintiff's Expert Brian Heikkila [Doc. 236], the Plaintiff's Motion for Partial Summary Judgment [Doc. 237], and the Defendant's Motion for Summary Judgment [Doc. 238]. The Clerk is directed to enter judgment in favor of the Defendant and close this case.

SO ORDERED, this ___17th___ day of February, 2022.

THOMAS W. THRASH, JR.
United States District Judge