IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CSX TRANSPORTATION, INC.,

    Plaintiff,

      v.

GENERAL MILLS, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-201-TWT

### OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Plaintiff CSX Transportation, Inc.'s ("CSX") Motions for Partial Summary Judgment [Docs. 183 and 237]. For the reasons set forth below, CSX's Motion for Partial Summary Judgment as to General Mills's 13th and 15th Affirmative Defenses [Doc. 183] is GRANTED and its Motion for Partial Summary Judgment as to Application of Section 15.1 of the Sidetrack Agreement [Doc. 237] is GRANTED.

## I. Background[1]

This case has a long history before this Court and the relevant facts are well known to the parties. The case originally arose out of a 2005 workplace accident involving General Mills employee Douglas Burchfield that took place while

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Burchfield was switching railcars on General Mills's segment of a private rail sidetrack. (Pl.'s Statement of Undisputed Material Facts in Supp. of 1st MPSJ (Doc. 183) ¶ 8; Def.'s Resp. to Pl.'s 1st Statement of Material Facts ¶ 8). In the first iteration of this case, the *Burchfield* litigation, Burchfield sued CSX and the owner of the railcar involved in the accident. (Pl.'s Statement of Undisputed Material Facts in Supp. of 1st MPSJ ¶¶ 10-11). CSX tendered the defense of the lawsuit to General Mills, but General Mills declined to provide a defense or intervene in the action. (*Id.* ¶¶ 11-13). After a trial, a successful appeal, and a retrial, Burchfield ultimately settled with CSX for $16 million. (*Id.* ¶¶ 13-22). CSX requested indemnification from General Mills for the full settlement amount plus attorneys' fees and costs, but General Mills refused. (*Id.* ¶¶ 22-23; Def.'s Resp. to Pl.'s 1st Statement of Material Facts ¶¶ 22-23).

## A. The Sidetrack Agreement

CSX then filed the present breach of contract action against General Mills pursuant to the parties' February 9, 1989 Private Sidetrack Agreement ("Sidetrack Agreement"), which governed the construction, maintenance, and use of a private sidetrack that General Mills used to ship and receive rail freight for its facility in Covington, Georgia. (Pl.'s Statement of Undisputed Material Facts in Supp. of 1st Mot. for Part. Summ. J. ¶ 1-2, 24). CSX performed switching services for General Mills's operations until around 2000, although the Sidetrack Agreement gave General Mills the opportunity to conduct those operations itself. (Pl.'s Statement of Undisputed Material Facts in Supp. of 1st Mot. for Part. Summ. J. ¶¶ 6-7; Def.'s Resp.

to Pl.'s 1st Statement of Material Facts ¶ 6; Pl.'s Statement of Undisputed Material

Facts in Supp. of 2nd Mot. for Part. Summ. J. (Doc. 237-1) ¶ 4). Around 2000, General

Mills purchased a Trackmobile and begun conducting its own switching operations.

(Pl.'s Statement of Undisputed Material Facts in Supp. of 1st Mot. for Part. Summ.

J. ¶ 7; Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part.

Summ. J. ¶ 5). Section 11 of the Sidetrack Agreement provides, as relevant:

> Except as otherwise provided herein, any and all damages, claims, demands, causes of action suits, expenses . . . judgments and interest whatsoever . . . in connection with injury to . . . any person . . . arising out of or resulting directly or indirectly from the . . . use . . . [or] operation . . . of the Sidetrack shall be divided between the parties as follows:
>
> (A) Each party shall indemnify and hold the other party harmless from all losses arising from the indemnifying party's willful or gross negligence, its sole negligence and/or its joint or concurring negligence with a third party.
>
> (B) The parties agree to jointly defend and bear equally between them all losses arising from their joint or concurring negligence.

(Am. Compl., Ex. A (Sidetrack Agreement)). And in Section 15.1, the Sidetrack

Agreement provided General Mills the aforementioned "right to switch with its own

trackmobile or locomotive power over [its] segment of the sidetrack." (*Id.*). General

Mills agreed in Section 15.1 to:

> assume[] all risk of loss, damage, cost, liability, judgment and expense, (including attorneys' fees) in connection with any personal injury to . . . any persons . . . that may be sustained or incurred in connection with, or arising from or growing out of, the operation of [General Mills'] trackmobile or locomotive power upon said Sidetrack.

(*Id.*).

### B. The Accident

With regard to the accident itself, General Mills employee Rodney Turk told Burchfield that they needed to switch an empty railcar, AEX 7318, off of the track so that they could move a full railcar, AEX 7136, into the rail shed. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 6). To complete the switch, the two needed to use a Trackmobile, which is a vehicle used to push and pull railcars. (*Id.*). Turk had no formal training in operating the Trackmobile prior to the accident. (*Id.* ¶ 8; Excerpt of Turk Dep. At 98-99 (Doc. 245-3)). The day of the accident, Burchfield was also training Turk. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 8; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 8). Turk and Burchfield got into the Trackmobile together, and Turk drove it to Track 22. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 9; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 9). Burchfield got out of the Trackmobile at Track 22, and Turk used the Trackmobile to push three loaded, connected railcars north along the track to make space for the AEX 7136 railcar. (*Id.*). Burchfield then got back into the Trackmobile with Turk and drove it south on Track 22, away from the three railcars, before getting out again to throw a rail line switch that would allow the Trackmobile to travel onto Track 23. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 10; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 10).

Burchfield and Turk then continued to drive up Track 23 before stopping again to couple AEX 7136 before ultimately pushing AEX 7136 north on Track 22,

uncoupling it from the Trackmobile, and leaving it near the first three rail cars on the north end of Track 22. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 10; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 10). Turk believes that he saw AEX 7136 move about a foot when he uncoupled AEX 7136 from the Trackmobile. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 12; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 12). Turk and Burchfield left AEX7136 sitting on Track 22 without chocks and without engaging the derailer. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 13; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 13). Turk and Burchfield then used the Trackmobile to move AEX 7138 south down Track 22 towards the CSX mainline so that it would be out of the way. (*Id.*). While Turk and Burchfield remained on the south end of Track 22 downgrade of AEX 7136, with AEX 7138 still coupled to the Trackmobile, Turk heard a noise and saw AEX 7136 rolling down the track towards them. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 14; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 14; Excerpt of Turk Dep. at 12-29 (Doc. 237-2)). The AEX 7136 railcar and the Trackmobile ran over Burchfield and caused significant injuries, including the partial amputation of both legs. (Pl.'s Statement of Undisputed Material Facts in Supp. of 2nd Mot. for Part. Summ. J. ¶ 19, 21; Def.'s Resp. to Pl.'s 2nd Statement of Material Facts ¶ 21).

## II.  Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

### A. CSX's Motion for Partial Summary Judgment on General Mills' 13th and 15th Affirmative Defenses

In this Motion, CSX seeks partial summary judgment as to General Mills' 13th and 15th affirmative defenses in its Answer. General Mills' 13th affirmative defense is that "Plaintiff's claim is barred, in whole or in part, to the extent that Plaintiff failed to mitigate its alleged damages." (Ans. to Am. Compl. (Doc. 82) at 28). General Mills' 15th affirmative defense is that

> [t]o the extent Plaintiff maintains that it was not negligent or that its negligence did not contribute to Burchfield's injuries, Plaintiff's $16,000,000.00 settlement with Burchfield pending the resolution of the 11th Circuit appeal was unreasonable, and General Mills is entitled to an offset of any claimed loss to the extent that the settlement was unreasonable.

6

(*Id.*). CSX argues that the Georgia law doctrine of vouchment bound General Mills to the judgment in the *Burchfield* litigation and prevents it from second-guessing CSX's strategic decisions in litigating and settling that action because General Mills was properly vouched into the *Burchfield* litigation and declined to participate. (Pl.'s 1st Mot. for Part. Summ. J., at 10-13, 15-16). CSX asserts that General Mills is bound by the judgment under the vouchment doctrine regardless of whether General Mills had a duty to defend CSX under the Sidetrack Agreement. (*Id.* at 14). CSX contends that because the *Burchfield* judgment itself is binding on General Mills, the post-judgment settlement "for less than the amount of the judgment award is also binding" on General Mills. (*Id.* at 15). CSX argues that General Mills' 13th affirmative defense fails for the additional reason that CSX's duty to mitigate its damages did not arise until after General Mills breached its duty to indemnify CSX for the post-judgment settlement. (*Id.* at 17-19). Finally, CSX contends that General Mills' 15th affirmative defense also fails because the post-judgment settlement of the *Burchfield* litigation for $16 million was reasonable as a matter of law. (*Id.* at 20-23).

In its response, General Mills agrees that it was vouched into the *Burchfield* litigation but argues that the vouchment doctrine binds both parties to the judgment as well as all of the facts decided in that action and that CSX is therefore prohibited from re-litigating the jury's determination that it was 100% at fault in the accident. (Def.'s Resp. in Opp. To Pl.'s 1st Mot. for Part. Summ. J., at 2, 12-17). It contends that the only questions left for the Court to consider under the vouchment doctrine are

whether the Sidetrack Agreement requires General Mills to indemnify CSX for CSX's sole negligence and whether General Mills has additional defenses that could not have been raised in the prior suit. (*Id.* at 11-12, 17-18). General Mills argues that its mitigation defense does not challenge the amount of the judgment in the *Burchfield* litigation but instead asserts that its monetary obligation to CSX under the Sidetrack Agreement was for a sum less than CSX's liability to Burchfield under the judgment. (*Id.* at 18-20). Additionally, General Mills asserts that because CSX made a claim for attorneys' fees as part of its losses under the Sidetrack Agreement, CSX's duty to mitigate arose when it started incurring attorneys' fees associated with the accident, which is the earliest time that its losses began to accrue. (*Id.* at 20-23). Finally, General Mills argues that it would not have been able to raise its 15th affirmative defense in the *Burchfield* litigation and that CSX is required to demonstrate that the settlement was reasonable by a preponderance of the evidence in order to seek indemnification. (*Id.* at 23-25). It contends that CSX cannot do so, however, because there is evidence that CSX had an opportunity to settle the *Burchfield* litigation for $10 million dollars and because CSX previously argued that the jury should not have awarded more than $8 million dollars. (*Id.* at 25).

The Eleventh Circuit's recent opinion reversing and remanding this matter in part is instructive as to the application of Georgia's vouchment doctrine. Here, the parties agree that CSX vouched General Mills into the *Burchfield* litigation and that they are both bound by that judgment, but they disagree as to how the doctrine applies to the claims and defenses in the present case. "Where a defendant may have

a remedy over against another person and vouches him into court by giving notice of the pendency of the action, the judgment rendered therein shall be conclusive upon the person vouched, as to the amount and right of the plaintiff to recover." O.C.G.A. § 9-10-13. The Eleventh Circuit already resolved one of General Mills's arguments when it held that General Mills is not required to indemnify CSX for CSX's sole negligence under Section 15.1 of the Sidetrack Agreement. *CSX Transp., Inc. v. Gen. Mills, Inc.*, 82 F. 4th 1315, 1324 (11th Cir. 2023). And it resolved another by holding that, under Georgia law, the vouchment doctrine does not bar CSX from seeking to establish that General Mills was "at least partially at fault" for Burchfield's accident and thus liable to CSX under the Sidetrack Agreement. *Id.* at 1324-25.

Several cases interpreting Georgia's vouchment statute enforce the statute's instruction that a vouchee is bound by the judgment of a prior action "as to the amount and right of the plaintiff to recover." O.C.G.A. § 9-10-13; *see, e.g.*, *Hardee v. Allied Steel Bldgs., Inc.*, 182 Ga. App. 587, 587-88 (1987) ("That is, the fact of the defendant's liability to the plaintiff and the amount of that liability, are matters binding upon the vouchee; the vouchee's liability to the defendant cannot be determined in this action but a separate action must be filed by the defendant to determine whether the vouchee is liable to the defendant."); *S. Ry. Co. v. Acme Fast Freight*, 193 Ga. 598, 600-01 (1942) ("The underlying purpose of the rule which permits vouching of another into court to defend a suit, where the defendant claims that the vouchee would in turn be responsible to him for any recovery had, is to conclude the vouchee upon the question of the voucher's liability to the original

9

plaintiff and the amount of such liability; thus leaving for future determination only the one other question as to whether or not the vouchee is in fact liable over to the vouching defendant."). More to the point, "[the Georgia Court of Appeals] and the Supreme Court have consistently interpreted [the statute's] language to mean precisely what it says." *Smith v. Transamerica Ins. Co.*, 218 Ga. App. 839, 840 (1995) ("[The vouchee] is bound by the finding of [the voucher's] liability to the insured, and the amount of that liability, nothing more.").

As to defenses, once the vouchee's liability to the voucher has been established in a second suit, the vouchee is also bound "with respect to any and all defenses which the voucher or vouchee either made or could have made to prevent recovery by the plaintiff in the former suit." *Acme Fast Freight*, 193 Ga. at 601. Under Georgia law, "[w]here by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." O.C.G.A. § 13-6-5. For a claim of breach of contract based on failure to indemnify, the breach occurs "the moment at which the party owing the duty refuses to indemnify the other party for amounts that the latter has paid to settle the claim of another or to satisfy the judgment of another." *Saiia Const., LLC v. Terracon Consultants, Inc.*, 310 Ga. App. 713, 715 (2011). In other words, "[w]here no funds have yet been expended, a party's right to seek indemnification has not yet actualized." *Davis v. S. Exposition Mgmt. Co.*, 232 Ga. App. 773, 775 (1998). And for an indemnitor to be liable for settlement amounts paid by an indemnitee, the Georgia Court of Appeals has held that the settlement amount must have been reasonable and "not in excess of what the

claimants could have reasonably expected to obtain, under the facts and applicable law, had the cases been allowed to proceed to verdict and judgment." *Cajun Contractors, Inc. v. Peachtree Prop. Sub, LLC*, 360 Ga. App. 390, 247 (2021) (citing *Robert & Co. Assocs. v. Pinkerton & Laws Co.*, 120 Ga. App. 29, 32 (1969)). In these cases, "[q]uestions regarding the reasonableness of the settlement are normally for a jury to decide." *Id.*

The Court turns first to CSX's vouchment arguments. Contrary to General Mills's position, vouchment does not bind "the voucher and the vouchee on all issues passed upon and decided in the prior suit." (Def.'s Resp. in Opp. To Pl.'s 1st Mot. for Part. Summ. J., at 14-15). Georgia law makes clear that vouchment binds the vouchee only to two things: the amount of the judgment, and the right of the plaintiff to recover against the voucher. O.C.G.A. § 9-10-13; *Smith*, 218 Ga. App. at 840. Thus, in the Court's view, the question of whether General Mills can raise its 13th and 15th affirmative defenses comes down to whether those defenses challenge either the amount of the *Burchfield* judgment or Burchfield's right to recover against CSX. This understanding of the vouchment doctrine is corroborated by the Georgia Supreme Court's holding that the vouchee is barred from raising defenses in the indemnification action that, if successfully raised in the first action, would have prevented the plaintiff from recovering. *Acme Fast Freight*, 193 Ga. at 601.

As the Court understands General Mills's 13th affirmative defense, it is not arguing that CSX could have mitigated its damages during the *Burchfield* litigation such that the resulting judgment would have been less. Instead, General Mills is

arguing that because CSX failed to mitigate its damages, General Mills cannot be responsible for CSX's full liability of $16 million under the terms of the Sidetrack Agreement. Therefore, this defense challenges neither the amount of the *Burchfield* judgment nor the fact of CSX's liability to Burchfield in the first action, and the vouchment doctrine does not bar General Mills from asserting it. O.C.G.A. § 9-10-13; *see Hardee*, 182 Ga. App. at 587-88.

General Mill's 15th affirmative defense presents a closer call. To begin, the Court is perplexed by General Mills's position that its challenge to the reasonableness of the settlement is not barred by the vouchment doctrine, given its statement in its brief that "[t]he amount of the verdict (or post-verdict settlement), in that sense, is established through vouchment[.]" (Def.'s Resp. in Opp. To Pl.'s 1st Mot. for Part. Summ. J., at 18). Simply put, the Court sees no way General Mills can challenge the reasonableness of the settlement without also attacking the amount of the judgment, given that the settlement here resulted in the judgment that ended the *Burchfield* litigation. General Mills's only rebuttal to this point seems to be that it could not have raised this defense in the *Burchfield* litigation if it were a formal party to it. (*See* Def.'s Resp. in Opp. To Pl.'s 1st Mot. for Part. Summ. J., at 17-18). True as that may be, that consideration only comes into play if one of the two statutory prerequisites to the application of the vouchment doctrine does not apply. Where as here, the defense challenges the amount of the judgment in the prior litigation, the vouchment doctrine bars the vouchee from raising it. The Court therefore finds there is no genuine issue of material fact that General Mills's 15th affirmative defense is barred

by the vouchment doctrine, and summary judgment is warranted in CSX's favor in this regard.

The Court next turns to CSX's other challenges to General Mills 13th and 15th affirmative defenses. General Mills's contention that CSX's duty to mitigate arose when it began accruing attorneys' fees in the *Burchfield* litigation is without merit for several reasons. First, the duty to mitigate does not arise until (1) a breach of contract has occurred, and (2) the breach has caused injury to one party. O.C.G.A. § 13-6-5. Here, because CSX's breach of contract claim is based on the indemnification provisions in the Sidetrack Agreement, the claimed breach of contract did not occur until General Mills declined to indemnify CSX for the post-settlement judgment that it paid to Burchfield. *Saiia Const., LLC*, 310 Ga. App. at 715 (holding that a breach occurs "the moment at which the party owing the duty refuses to indemnify the other party for amounts that the latter *has paid* to settle the claim of another or to satisfy the judgment of another." (emphasis added)). By that time, the damages CSX had incurred due to General Mills's alleged breach were fixed and could no longer be mitigated since the settlement had already been paid and CSX's attorneys' fees from the *Burchfield* litigation had already accrued. General Mills's position that CSX should have mitigated its damages by aiming to lessen the attorneys' fees it incurred in defending the *Burchfield* litigation is disingenuous, to say the least, given that General Mills is bound by the same judgment as CSX and may well have been bound to a higher judgment had CSX not sought to vigorously defend itself in the first action. In other words, CSX could not have mitigated the amount of attorneys' fees it

13

incurred in the *Burchfield* litigation without jeopardizing General Mills's potential financial liability in the present indemnification action. In any event, CSX had no duty to mitigate the attorneys' fees it accrued during the *Burchfield* litigation because General Mills's alleged breach of the indemnification provisions had not yet taken place at that time. *See* O.C.G.A. § 13-6-5. And because none of the cases General Mills cites in support of its arguments for mitigation of attorneys' fees involve the accrual of attorneys' fees before the breach in question occurred, they are factually inapposite. The Court therefore finds that there is no genuine dispute as a matter of law that CSX's duty to mitigate did not arise until General Mills refused to indemnify CSX for its payment of the settlement to Burchfield, at which point its damages were fixed and could not be mitigated. Summary judgment is thus warranted in CSX's favor as to General Mills's 13th affirmative defense.

Second, and for much the same reason, General Mills's contentions that CSX could have mitigated its damages by settling the case for less, and that the settlement was thus unreasonable, are without merit. General Mills's arguments on this defense rely on CSX's prior assertion that the verdict should have been reduced to $8 million and that CSX had a prior opportunity to settle the case for $10 million. General Mills neglects to mention the fact that a jury concluded that Burchfield was entitled to $20 million, a factor that weighs heavily on the determination of whether an indemnitor can be held liable for an indemnitee's settlement obligation. *See Cajun Contractors, Inc.*, 360 Ga. App. at 247 (providing that the settlement must be both reasonable and "not in excess of what the claimants could have reasonable expected to obtain, under

14

the facts and applicable law, had the cases been allowed to proceed to verdict and judgment."). Here, there is no question as to what a jury determined Burchfield was entitled to under the facts and applicable law in the second *Burchfield* trial. This same fact cuts against General Mills's argument that the reasonableness of a settlement is a jury question. *Id.* While that is a true statement of the law generally, in this case, a jury has already answered that question.

Moreover, there is record evidence that CSX's decision to forego Burchfield's initial settlement demand of $10 million was a reasonable strategic decision given that the demand was made before the first *Burchfield* trial, which resulted in a verdict in CSX's favor. (*See* Doc. 168-1 (Settlement Demand dated Nov. 9, 2007)). More importantly, General Mills has presented no authority supporting its position that the settlement must be unreasonable because CSX had a prior opportunity to settle the case for less, and *Cajun Contractors* supports the Court's conclusion that the settlement for $4 million less than the verdict award, after two trials and years of protracted litigation, was reasonable under the circumstances. As the Georgia Court of Appeals noted,

> [a] decision on whether a settlement amount is reasonable involves an overall evaluation of the extent of financial exposure the settling party faces if the party does not settle. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. Relevant too is whether the indemnitee tendered its defense to the indemnitor, whether it kept the indemnitor informed of the settlement negotiations, and whether the indemnitor had an opportunity to approve the settlement. The reasonableness inquiry is usually fact intensive and can be legally complex.

*See Cajun Contractors, Inc.*, 360 Ga. App. at 247 (quotation marks and citation omitted). There is no dispute that if CSX had not settled the *Burchfield* litigation, it was facing greater financial exposure under the jury's $20 million verdict, as was General Mills by virtue of its vouchment. In essence, General Mills is challenging CSX's litigation decisions in the *Burchfield* litigation because it is unhappy with the potential financial liability it could be facing if it is determined in this action that General Mills must indemnify CSX for the *Burchfield* settlement. General Mills could have intervened in the *Burchfield* litigation when it was vouched by CSX and played a role in the settlement decisions, but it declined to do so. *See CSX Transp., Inc.*, 82 F.4th at 1328 ("[A] vouchee who is invited to participate in the earlier action and chooses not to do so is more likely to find herself bound to determinations she does not like precisely because she chose not to participate when invited to do so."). Therefore, CSX has carried its burden of demonstrating the absence of a genuine issue as to the reasonableness of the settlement and General Mills has not rebutted the record evidence to that effect. *Anderson*, 477 U.S. at 257. Accordingly, summary judgment is warranted in CSX's favor on General Mills's 15th affirmative defense on this alternative ground, as well. For these reasons, CSX's Motion for Partial Summary Judgment as to General Mills's 13th and 15th Affirmative Defenses [Doc. 183] is GRANTED.

**B. CSX's Motion for Partial Summary Judgment on the Application of Section 15.1 of the Sidetrack Agreement**

In this Motion, CSX relies on this Court's prior Order denying its earlier Motion for Partial Summary Judgment as to the application of Section 15.1, [Doc. 134], and argues that Section 15.1 applies because Burchfield's accident was directly connected to the operation of the Trackmobile via the switching operations that were conducted that day. (Pl.'s 2nd Mot. for Part. Summ. J., at 10-11). CSX further asserts that the Trackmobile itself rolled over Burchfield, in addition to the AEX 7136 railcar, and that the "use of the Trackmobile was inextricably linked with moving the specific railcars at the center of the accident." (*Id.* at 11, 19). CSX largely relies on Turk's deposition testimony for this argument. (*See id.* at 11-20). CSX concludes Section 15.1 applies because "but for the operation of the Trackmobile on General Mills' segment of the private sidetrack, Burchfield's accident would never have occurred." (*Id.* at 20).

General Mills responds that because Section 15.1 is an indemnification provision and it is ambiguous, it must be construed against CSX as the drafter of the Sidetrack Agreement. (Def.'s Resp. in Opp. To Pl.'s 2nd Mot. for Part. Summ. J., at 8-9). General Mills contends on that basis that Georgia cases interpreting Section 15.1's "arising from . . . the operation of the Trackmobile" language in the context of insurance exclusions are instructive. (*Id.* at 10-12 (collecting cases)). Under these circumstances, General Mills asserts, the phrase "arising out of" is essentially equivalent to the but-for test used in tort claims. (*Id.* at 10-11). Applying that test, General Mills argues that the but-for cause of the accident was not the use of the

Trackmobile but was instead CSX's delivery of AEX 7136 for service with a faulty handbrake, and that the use of the Trackmobile was merely incidental to the accident. (*Id.* at 11-14). Finally, General Mills asserts that CSX's interpretation of Section 15.1 cannot be enforced because it would render Section 11.1 superfluous. (*Id.* at 14-15).

General Mills additionally argues that, even under CSX's interpretation of Section 15.1, CSX has still failed to establish that its losses arose from the operation of the Trackmobile. (*Id.* at 17-18). General Mills contends that it disputes CSX's characterization of the facts underlying its arguments because the Trackmobile was sitting stationary on the track when the accident occurred and the accident arose from the faulty handbrake on the AEX 7136 railcar. (*Id.* at 17-19). In other words, General Mills argues, CSX has not resolved any additional material facts since the Court addressed this issue in ruling on CSX's earlier motion for partial summary judgment. (*Id.* at 18-19).[2]

As discussed by the parties, the Court has previously considered the issue of whether the accident arose out of the operation of a Trackmobile on the sidetrack within the meaning of Section 15.1 of the Sidetrack Agreement. (*See* Doc. 134). There, the Court explained that

> "Under Georgia law pertaining to indemnity provisions, 'arising out of' means 'had its origins in,' 'grew out of,' or 'flowed from.'" The term "arising out of" does not equate to proximate cause in the "strict legal sense," and it does not "require a finding that the injury was directly

---

[2] The Court has also considered CSX's reply brief. (Doc. 251). In its brief, CSX essentially argues that the Court has already considered and rejected General Mills's arguments in opposition when it ruled on CSX's prior motion for partial summary judgment. (*See generally id.*).

18

and proximately caused by the insured's actions." "Arising from" does not have the same meaning as "proximately caused by." Instead, almost any causal connection or relationship will suffice. Thus, any claim or liability that the Plaintiff incurred "does not have to be the direct proximate result" of the operation of the trackmobile on the sidetrack to arise from it within the meaning of the indemnity provision in Section 15.1. The Plaintiff only must show that Mr. Burchfield's injuries "arose out of or were connected in some way" to the operation of the trackmobile for Section 15.1 to govern.

(Doc. 134 at 13 (citations omitted)). General Mills presented the same argument it does here, that Section 15.1 is ambiguous and must be construed against CSX, and that a but-for causation standard therefore applies. (*Id.* at 13-14). The Court found that CSX failed to carry its burden even under the more lenient interpretation of "arising from" that it proposed. (*Id.* at 14-15). Importantly, the prior motion for partial summary judgment was filed just after discovery commenced and was based on the parties' admissions in their pleadings. (*Id.* at 5-6). The Court ultimately concluded that the parties' admissions did not "conclusively establish a causal connection between the operation of the trackmobile and Mr. Burchfield's injuries." (*Id.* at 15). On that basis, the Court denied CSX's partial motion for summary judgment as to the application of Section 15.1

In the present motion, CSX again seeks a ruling that there is no genuine dispute that Section 15.1 applies under the facts of this case and that it therefore governs whether General Mills must indemnify CSX for the *Burchfield* judgment. At the outset, the Court notes that the bulk of General Mills's arguments conflate the issue CSX seeks summary judgment on. As CSX clarifies in its reply brief, it is not seeking a ruling that General Mills was negligent and that its negligence contributed

19

to causing the accident. (Pl.'s Reply in Supp. of 2nd Mot. for Part. Summ. J., at 8). Instead, CSX is seeking only a ruling that the accident "arose out of or [was] connected in some way" to the operation of the Trackmobile such that Section 15.1 applies, in which case, General Mills will be required to indemnify CSX for the *Burchfield* judgment if—and only if—it is later determined that General Mills was at least partially to blame for causing the accident. (*See* Doc. 134 at 13). Additionally, the Court already rejected in its prior order General Mills's argument that CSX's proposed reading of Section 15.1, which does not require a determination as to proximate cause, renders Section 11.1 superfluous. (*See id.* at 8-10).

Thus, the only issue remaining before the Court for determination is whether, applying the proper standard of interpretation for Section 15.1 under Georgia law, the undisputed facts establish that the Burchfield accident arose out of the operation of the Trackmobile. To reiterate, as the Court set forth in its prior order, the phrase "arising out of" in the context of indemnity provisions does not "require a finding that the injury was directly and proximately caused by the [indemnitee's] actions. Almost any causal connection or relationship will do." *JNJ Found. Specialists, Inc.* v. D.R. Horton, Inc., 311 Ga. App. 269, 270 (2011); *Viad Corp. v. U.S. Steel Corp.*, 343 Ga. App. 609, 615 (2017). General Mills makes much of the fact that insurance contracts are construed in favor of the insured and against the insurer who drafts the contract under Georgia law since CSX drafted the Sidetrack Agreement at issue here. But General Mills's arguments rely on its conclusion that the provision at issue is ambiguous, and here there is no ambiguity. *See, e.g., Serv. Merchandise Co. v. Hunter*

20

*Fan Co.*, 274 Ga. App. 290, 292 (2005) ("When an indemnity agreement is ambiguous, such ambiguity must be construed against the drafter."). General Mills essentially argues that the provision is ambiguous solely because it disputes the interpretation of the phrase "arising out of" that CSX advocates for when CSX's interpretation is clearly spelled out in Georgia law. In other words, General Mills cannot manufacture an ambiguity and then claim that Section 15.1 must be construed against CSX as the drafter on that basis.

Moreover, construing the contract strictly against CSX as the indemnitee does not change the proper interpretation of the "arising out of" language to a but-for causation standard, as General Mills seems to contend. *Viad Corp.*, 343 Ga. App. at 614. Perplexingly, all of General Mills's arguments in that regard treat CSX, as indemnitee, as akin to an insurer rather than an insured. (See Def.'s Resp. in Opp. To Pl.'s 2nd Mot. for Part. Summ. J., at 10-11 ("Under these circumstances, where CSXT is both the indemnitee and the drafter of the Sidetrack Agreement (akin to an insurer vis-à-vis a policy exclusion) . . .) (citing *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 304 Ga. App. 314, 321 ("[E]xclusions in an insurance policy are interpreted narrowly, in favor of the insured.")). But that contention is flatly belied by O.C.G.A § 33-1-2, the definitions section for the Georgia Insurance Code, which defines an insurer as, *inter alia*, an indemnitor. Therefore, none of the authorities General Mills relies on to try and place CSX on the same footing as an insurer are applicable here.

Having clarified that the phrase "arising out of" requires only a "causal connection or relationship" to the injury at issue, the Court turns to whether there is a genuine dispute of material fact that the Burchfield accident arose out of the operation of the Trackmobile pursuant to Section 15.1 of the Sidetrack Agreement. *See Viad Corp.*, 343 Ga. App. at 615. The Court determines that there is not. The undisputed facts, as cited in the background section above, are that Turk and Burchfield needed to switch rail cars in order to bring a full rail car, AEX 7136, into the shed for unloading. This could only be accomplished through the use of the Trackmobile. After using the Trackmobile to move three other rail cars, there was space on the track for AEX 7136. Turk and Burchfield then used the Trackmobile to push AEX 7136 north on Track 22, where they parked it on a grade before uncoupling and heading south down the track to couple to the empty AEX 7138 rail car, with the goal of moving it out of the way. At that point, AEX 7136 began rolling south down Track 22 before colliding with the Trackmobile and AEX 7138, with the Trackmobile and AEX 7136 rolling over Burchfield and causing the partial amputation of both legs. These undisputed facts establish that the accident occurred during the operation of the Trackmobile as it was being used to complete the task of moving empty rail cars, including the AEX 7138, so that the full AEX 7136 rail car could be moved into the shed. As part of this task, Turk and Burchfield used the Trackmobile to move the AEX 7136 rail car into the parked position from which it ultimately rolled down the track to cause the collision. That act more than suffices as a "causal connection or relationship" between the operation of the Trackmobile and the accident. *See Viad*

22

*Corp.*, 343 Ga. App. at 615. Put another way, if it were not for Turk and Burchfield's operation of the Trackmobile that morning, the AEX 7136 would not have been positioned for the accident to occur the way it did, because the rail cars could not have been switched without the Trackmobile.

General Mills's arguments against this conclusion again hinge on the issue of causation. It asserts that the operation of the Trackmobile did not cause the accident, a faulty handbrake on the AEX 7136 did. (Def.'s Resp. in Opp. To Pl.'s 2nd Mot. for Part. Summ. J., at 17). While that may (or may not) be true, it is irrelevant to the issue before the Court at present. *Applicability* of Section 15.1 hinges only on whether the accident arose from the operation of the Trackmobile; *liability* under Section 15.1 is a question for another day. General Mills's other argument is that the Trackmobile was not in operation at the moment that the accident happened. But again, Georgia law requires only a causal connection, and Section 15.1 did not condition application of the indemnification provision on the accident having occurred while the Trackmobile was actively being driven. *See Hall v. Ross*, 273 Ga. App. 811, 813 (2005) (noting that conditions precedent are disfavored and are created by "explicit statements that certain events are to be construed as conditions precedent"). Where as here, no such language is present, the Court must enforce the plain language of Section 15.1. *See SPI Holdco, LLC v. Mookerji*, 361 Ga. App. 449, 452-53 ("[T]he cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract . . . when the language of a contract is plain and unambiguous, judicial construction is not only unnecessary but forbidden."

23

(quotation marks and citation omitted)). The intent of the parties in executing Section 15.1 is clear here—to shift the risk of accidents occurring on General Mills's segment of the sidetrack arising from the operation of its own Trackmobile to General Mills. General Mills's proposed reading of the "operation of the trackmobile" language would all but eviscerate that intent. For these reasons, CSX has carried its burden of demonstrating there is no genuine dispute of material fact that the Burchfield accident arose from the operation of the Trackmobile within the meaning of Section 15.1 and that Section 15.1 therefore applies to the Burchfield accident at issue in this case. Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 257. Therefore, CSX's Motion for Partial Summary Judgment as to Application of Section 15.1 of the Sidetrack Agreement [Doc. 237] is GRANTED.

## IV. Conclusion

For the reasons set forth above, the Plaintiff CSX Transportation, Inc.'s ("CSX") Motion for Partial Summary Judgment as to General Mills's 13th and 15th Affirmative Defenses [Doc. 183] is GRANTED and its Motion for Partial Summary Judgment as to Application of Section 15.1 of the Sidetrack Agreement [Doc. 237] is GRANTED.

SO ORDERED, this ____21st____ day of June, 2024.


THOMAS W. THRASH, JR.
United States District Judge

24